THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| The Estate of Edward C. Gandy, Jr., by and through its administrator Ad Prosequendum, Shane S. Gandy and Shane S. Gandy, in his own right,<br>　　　　　　　　　　*Plaintiff*<br>vs.<br>City of Millville, Millville Police Department Police Chief Jody Farabella, in his individual capacity, Police Officer Colt Gibson, in his in his individual capacity, Cumberland County Guidance Center, Cumberland County Mental Health & Crisis Screening Facility, Marie Hasson, M.D., in her individual capacity, Center for Family Guidance, P.C., John and Jane Does Center for Family Guidance, P.C. 1-10 (fictitious individuals) Inspira Inpatient Adult Behavioral Health, Bridgeton, Dr. Stephen Marc Scheinthal, DO, in his individual capacity, Dr. James J. Rogers, DO, in his individual capacity, John and Jane Doe Police Officers 1-10 (fictitious individuals) in their individual capacities, John Doe Corporations 1 through 10, and John Doe Entities 1 through 10, all whose true names are unknown,<br>　　　　　　　　　　*Defendants* | CIVIL ACTION<br><br>INDEX NUMBER<br><br>1:20-cv-00641-NLH-AMD<br><br><br>AFFIDAVIT OF MERIT |

STATE OF　　　　　　　)
　　　　　　　　　　　 ) ss:
COUNTY OF　　　　　　)

　　　Pursuant to N.J.S.A. 2A:53A-27, I, Vivian Chern Shnaidman, MD, after having reviewed the third amended complaint in the above captioned lawsuit, as well as the available medical documents regarding the psychiatric care of Edward C. Gandy (the "Deceased"), the subject of the above captioned lawsuit, swear under oath:

1 of 6

1. I am a Medical Doctor, licensed in New Jersey and a Board-certified practicing psychiatrist with twenty-five (25) years experience as a forensic psychiatrist. I have been recognized in my specialties by the courts of New Jersey and New York, with over 200 court appearances. My CV is attached hereto. I have no financial interest in the outcome of the within case.

2. I have reviewed information provided to me in the matter of Estate of Gandy v. City of Millville, et al and the medical care given to the Deceased.

3. Based upon the information provided to me currently, it is my belief, to a reasonable degree of medical and scientific certainty that the care provided by Inspira Medical Center, Family Guidance Center, the doctors, nurses, and other professionals employed by/contracted by those institutions fell below standards of care generally accepted in the medical, correctional medicine and custodial community. The specific medical professionals include Stephen Scheinthal, D.O., James Rodgers, D.O., Marie Hasson, M.D., Victoria Eligulashvili, M.D., and Christal Hardin, R.N.

4. Specifically, based on the information available to me: Between November 16, 2017, and January 11, 2011, Mr. Edward Gandy was seen by mental health professionals on an emergency basis at least four times.

5. During that same time period, he canceled or did not keep at least one scheduled outpatient appointment. On those four emergency visits to Inspira, Mr. Gandy was brought to the screening center by police after making suicidal statements in public and asking the police to shoot him. On the first three occasions he was released into the community. On the fourth occasion, the process of civil commitment was apparently

initiated but then abandoned for unclear reasons. Mr. Gandy was again released into the community. There is no indication that any changes were made to his medications or that any efforts were made to ensure compliance with psychotropic medications. Several days after Mr. Gandy was released from the emergency screening center, he entered a store and this time when police were called, he was shot and killed.

6. Mr. Gandy had a history of asking the police to shoot him and was reportedly well known to the Millville police department.

7. All of the Inspira records have a vague system of documentation where the individual notes are not signed and the entire team signs the notes at the end of the hospitalization. As a result of the disastrous documentation, which provider actually did what is not always easily identifiable from the records.

8. Although there is evidence that the treating providers has access to previous medical records, and Gandy's suicidal statements and behaviors are repeatedly documented, the records indicate that the treating physicians ignored the severity of Gandy's illness.

9. On every hospitalization, Andrew Scheinthal, D.O., gave orders to chemically restrain and medicate Gandy, then ordered discharge to the community within minutes or hours, despite no appropriate follow plan and not documenting that the patient was not a danger to himself or others, grossly violating the accepted standard of care.

10. On the 11/15/2017 emergency room encounter, despite multiple notes stating that Gandy was suicidal and required a higher level of care, Gandy was discharged by Dr. Scheinthal only an hour after a documented angry outburst and inappropriate behavior.

11. Despite a discharge diagnosis of Bipolar Disorder, Mixed, on the next Inspira visit, 11/28/2019, Gandy's suicidal ideation was documented as "new." This example is just one of the multitude of documentation errors and inconsistencies in the Inspira medical records.

12. Despite these previous documented psychiatric emergency room visits, on 1/9/2018, attending physician Dr. Victoria Eligulashvili gave provisional admitting diagnoses of Depression and Anxiety, indicating that no patient history was reviewed or considered, completely ignoring Gandy's known and documented psychiatric disorder. Ignoring a known psychiatric diagnosis, which informs treatment, is outside of the parameters of standard of care, particularly in this electronic age when all records can be instantaneously accessed.

13. An inpatient referral note was handwritten by nurse Christal Hardin, RN, on 1/10/18, valid through 1/11/18 at 17:31 (5:31 pm). Ms. Hardin apparently had access to different medical records because she documented Gandy's diagnoses as Suicidal, Anxiety, Autism, and Major Depression. There is no indication that the Autism diagnosis was ever communicated to the attending physicians. More importantly, there is no indication that Ms. Hardin ever made her replacement aware that civil commitment and transfer had to occur prior to 5:31 pm on 1/11/2018 or the orders would be voided, again, outside the scope of the standard of care, where such important matters must be documented and passed on to the next shift.

14. Although inpatient psychiatric admission and hospitalization were finally initiated on this last visit to Inspira, the transfer never took place. A history and physical note was

dictated by Marie Hasson, M.D. on 1/11/2017, several hours prior to the expiration of the transfer order, however, Dr. Hasson does not appear to have followed up to check if the transfer ever took place, despite documenting suicidality and the need for inpatient admission. Contrary to the standard of care, she did nothing to rectify the situation when the time period documented by Hardin expired.

15. On 1/11/2017, James J. Rodgers, D.O. came on duty and recommended that Gandy be hospitalized. However, he also did nothing to ensure that this hospitalization would take place.

16. Finally, on 1/11/2018, despite the documented recommendations and written orders of at least four physicians and one registered nurse, Gandy was released into the community.

17. On 1/18/2018, Mr. Gandy was again seen at the Cumberland County Guidance Center.

18. On 1/22/2018, Gandy created a disturbance in the parking lot of a RiteAid Pharmacy in Millville, NJ. Police were called and shot and killed Gandy.

19. For the reasons summarized above and based on the records available to me, it is my opinion that to a reasonable degree of medical certainty, Stephen Scheinthal, D.O., James Rodgers, D.O., Marie Hasson, M.D., Victoria Eligulashvili, M.D., and Christal Hardin, R.N. violating the accepted standard of care in their treatment of Gandy.

20. My opinions in this matter have been formed with my current beliefs based upon the information presented to me. My conclusions have been reached to a reasonable degree of medical and scientific certainty.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Vivian Chern Shnaidman, MD

Date: March 14, 2022

Sworn and subscribed before
me this 15th day of March, 2022

_____
Notary Public



MARCI FRISCIA
NOTARY PUBLIC OF NEW JERSEY
Commission # 50124670
My Commission Expires 3/10/2025

6