# GROSSMAN, HEAVEY & HALPIN

A PROFESSIONAL CORPORATON
COUNSELLORS AT LAW
www.grossmanandheavey.com

**RICHARD A GROSSMAN**
rag@grossmanandheavey.com
**THOMAS J. HEAVEY**
tjh@grossmanandheavey.com
**MICHAEL G. HALPIN**
mgh@grossmanandheavey.com
**MATTHEW J. HEAGEN**
matt@grossmanandheavey.com
**SHELBY L. FALCO**
slf@grossmanandheavey.com
**BRENDAN M. RUCKERT**
bmr@grossmanandheavey.com

April 8, 2022

241 BRICK BLVD
BRICK, NEW JERSEY 08723
(732) 206-0200

FACSIMILE (732) 206-0205

Honorable Judge Christine P. O'Hearn
Mitchell H. Cohen Building & US Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

RE: Gandy v. City of Millville, et als
Case No. 1:20-cv-00641-CPO- AMD

Dear Judge O'Hearn:

As you are aware this office represents Inspira Medical Centers, Inc. and Christal Hardin, R.N. in regard to the above referenced matter. Please accept this letter brief in reply to plaintiff's opposition to our notice of motion to dismiss, Christal Hardin, R.N.

**MOVANT'S COUNTERSTATEMENT OF FACTS IN REPLY TO PLAINTIFF'S OPPOSITION**

1. It is undisputed that the plaintiff's decedent, Edward G. Gandy, Jr., died January 22, 2018.

2. Plaintiff's Complaint filed January 17, 2020 alleges both a survival action as well as a wrongful death action in claims for relief against all parties including "Cumberland County Health and Crisis Center." Inspira Medical Center is not named in the caption. It includes "John and Jane Doe Police Officers 1-10 (fictitious individuals) in their individual capacities, John Doe Corp's 1-10, and John Doe entitles, 1-10, all whose entities are unknown." (Hereinafter referred to as "John Doe Recitation")

3. The caption of plaintiff's first amended complaint filed on 8/27/20, named Cumberland County Mental Health and Crisis Screening Facility, Inspira Health Center Bridgeton, Mental Health Unit, Inspira Medical Center, etc. It included a claim for relief in negligence against Inspira Mental Health and Inspira Medical Center and the John Doe Recitation.

4. Included in the 8th claim for relief is wrongful death damages against Inspira Mental Health and Inspira Medical Center, named for the first time.

5. Said Complaint contains essentially the same factual allegations as the first two complaints and the 7th claim for relief now includes claims against Inspira Mental Health, Inspira Medical Center, Center for Family Guidance, PC, Inspira Inpatient Adult Behavioral Health, Dr. Schienthal, Dr. Rogers, and the John Doe Recitation.

6. The 8th claim for relief, seeks wrongful death damages against the same aforementioned set of defendants named in the 7th claim of relief.

7. The plaintiff's third amended complaint filed November 23, 2021, now adds three new parties, Dr. Marie Hasson, Dr. Victoria Eligulashvili and Christal Hardin, RN. Plaintiff includes the same John Doe Recitation.

8. It is undisputed that the wrongful death claims in the State of New Jersey are governed by N.J.S.A. 2A:31-1, et seq.

9. Beginning with the first complaint, filed on 1/17/20, "John Doe Recitation" for non-police defendants is as follows: "John Doe Corporations 1-10; and John Doe entities 1-10." There are no John Doe individuals referenced in the initial complaint filed January 17, 2020. The Recitation refers to corporations and entities. Nowhere does it designate a John Doe individual care

provider who is either a nurse, or a physician, or a psychologist, or a mental health professional, who the plaintiff has identified with any specificity.

10. Plaintiff's first amended complaint filed August 10, 2020, uses the identical John Doe Recitation as the initial complaint. No individual Inspira Health Care Providers are named.

11. In plaintiff's second amended complaint filed 9/16/21, the John Doe Recitation has been carried forward identically from the initial complaint and the first amended complaint. The only time plaintiff uses a John Doe designation for any "fictitious individual" is when it is used with respect to "John and Jane Doe police officers 1-10 (fictitious individuals) in their individual capacities."

12. In preparing his John Doe Recitation, plaintiff was careful to note a distinction between individuals, entities and corporations. Plaintiff used individuals only with respect to police officers. Plaintiff used entities and corporations only with respect to health care providers.

13. Plaintiff never requested the plaintiff's medical records from Inspira. Attached as Exhibit A, is an internal document from Inspira Health Network with respect to all individuals, and/or companies, who requested medical records for the plaintiff's decedent, Edward Gandy. Nowhere in that list, of 9 requests, is there a request from the plaintiff's family and/or plaintiff's counsel. Between the dates of 2/1/17 and 12/7/2020, records were requested nine times. This fact was confirmed by Shane Gandy, plaintiff's administrator, at his deposition on April 6, 2022. (Transcript unavailable at this time.)

14. According to the certification of counsel submitted by Conrad J. Benedetto, Esq., dated 3/24/22, representatives of the plaintiff's decedent, Shane Gandy first contacted Mr. Benedetto in January of 2020. Shane Gandy at his deposition on April 6, 2022, said that he and

his family intended to pursue a cause of action against health care providers in the immediate days after the death of Edward Gandy. In fact, they retained an attorney and then discharged him before going to Mr. Benedetto's office.

15. Pursuant to N.J.S.A. 2A:31-1 the discovery rule in not available to extend the running of statute of limitations in a wrongful death action. It is therefore undisputed that the statute of l imitations on the wrongful death claims of Edward C. Gandy, Jr., ran on January 18, 2020.

16. It is undisputed that plaintiffs had the ability to file a complaint alleging negligence, as well as wrongful death, prior to January 18, 2020. It is further undisputed that the first complaint was filed by Mr. Benedetto's office on January 17, 2020, one day before the running of the two year Statute of Limitations. Inspira Health Network is not named in the caption of that complaint. Inspira Medical Center is not named in the caption of that Complaint. There is no reference to any Inspira defendant in the caption of that complaint. The John Doe Recitation does not refer to any "fictitious health care provider." Clearly, there is no reference in that complaint, to Inspira health network or the Inspira Medical Center. There is no reference to a John Doe and/or Jane Doe who is a nurse care provider who provided care to the plaintiff on January 9 and/or January 10, 2018, who identity cannot be ascertained. There is no level of specificity in the caption with respect to a potential nurse defendant from Inspira, who could be substituted later as a named defendant.

17. Plaintiff's first amended complaint filed 7 months after the Statute lapsed, filed 8/10/20, now does contain in its caption, a reference to "Inspira health Center Bridgeton, Mental Health Unit." It does not reference Inspira health Network, the proper corporate party. It does not reference Inspira Medical Center. It does not mention Bridgeton Medical Center. It includes the same John Doe Recitations.

18. With respect to the second amended complaint filed 9/16/21, the John Doe Recitation continues. There is no reference to any John Doe or Jane Doe, RNs and/or nurses, who cared for the plaintiff on January 9, 2018 or January 10, 2018, whose true identities are unknown.

19. The first answer to the initial complaint was filed by my office on behalf of the proper legal defendant, Inspira Medical Centers, Inc. on 10/16/20. Between 10/16/20 and the filing of the third amended complaint filed on 11/23/21, which names Nurse Kristal Harding for the first time, plaintiff did not inquire of the defendant Inspira Medical Centers, about the identities of any individuals, who cared for the plaintiff on January 9, 2018 or January 10, 2018 and plaintiff never advised the defendants that they were trying to identify a previously unidentified care provider.

20. At no time, did the name Kristal Hardin, RN come up as a proposed new defendant at any of the conferences with the court, or in any personal conversations with defense counsel, prior to the plaintiff filing his proposed third amended complaint.

21. In Mr. Benedetto's certification, at Paragraph 6, he references an August 21, 2021 email from my office purporting to send medical records. His exhibit C attachment is an email with a cover letter from Shelby Falco, Esquire, containing answers to supplemental Interrogatories, and also enclosing several policies but, it contained no medical records. As such, the statement in Paragraph 6 of his certification is not correct because he did not receive "additional records" from defendant Inspira on that date.

22. With respect to Paragraph 7 of Mr. Benedetto's certification, I can only assume he is referring to a conversation I had with him as "counsel for Inspira" wherein I advised him that Dr. Marie Hasson, who we had discussed at a prior court conference, and who was going to be named as a defendant, was not my insured and would be separately insured by someone else. There was

never any discussion at that time about any nurse and/or nurses and I would have never said to him that I "believed other defendants should be added."

23. It is also undisputed that plaintiff was in possession of a copy of the medical chart of Inspira prior to 8/21, by virtue of the fact that in Paragraph 8 of Mr. Benedetto's certification he notes that "the records were reviewed by both he, his expert Lawrence Guzzardi, MD, an associate attorney, and a paralegal." Where he got these records from in unknown, because records were never requested from my office and/or from Inspira as per Exhibit A. But, plaintiff's counsel and his expert had the records before 12/8/20. However, even that date is beyond the Statute of Limitations.

24. Counsel does not state, what records he received or when he first received those records. But it is undisputed that he had the records at least as early as Dr. Guzzardi's AOM which was certified by Dr. Guzzardi on December 8, 2020 and filed with the court on December 11, 2020. (See attached AOM as Exhibit B) This is a 5 page AOM that details at length the medical care rendered to the plaintiff in January of 2018, which is the care in question. There are two large paragraphs dedicated to January 9, 2018 and January 10, 2018, which is the time period when it is alleged that the late-added defendant Kristal Hardin, attended to the plaintiff. It is therefore undisputed that plaintiff had access to the medical records, disclosing the name of Kristal Harding, at least as early as the time that Dr. Guzzardi completed his review and authored his AOM on December 8, 2020.

25. Following Dr. Guzzardi's completed AOM on December 8, 2020, plaintiff took no action, to amend the complaint to name Nurse Kristal Harding as a defendant, until plaintiff filed his notice of motion to file a third amended complaint with the court on November 5, 2021. Eleven months after plaintiff's expert completed his review of the medical chart, plaintiff first attempts to

name Nurse Kristal Harding as a defendant. Dr. Guzzardi who has a medical degree from Jefferson Medical College, and an MBA from Warton, and who is Board Certified in Family Practice, Emergency Medicine and Medical Toxicology. Nowhere in Dr. Guzzardi's 5 page AOM, does he state that the medical records are incomplete, "a disaster," inconclusive, illegible or in any way deficient for his ability to review the same.

### PLAINTIFF HAS NOT PROPERLY USED THE JOHN DOE ROLE AND CANNOT NAME NURSE HARDIN AS A DEFENDANT

In plaintiff's opposition, plaintiff argues that the law, "does not require a plaintiff to include every individual mentioned in a plaintiff's medical records as a defendant." Plaintiff then argues that there is a mechanism for cases, "exactly like this one," where plaintiff is allowed to plead fictitious names. However, while the law does permit the pleading of fictitious names in place of unknown real ones, there are requirements to use the John Doe rule and plaintiff has without a doubt failed to satisfy them.

The plaintiff never named a John/Jane Doe nurse, or John/Jane Doe doctor. The plaintiff named "John Doe entities, corporation and John Doe police officers." This is important because plaintiff obviously is aware of the difference between entities, corporations and individual defendants, since John Doe individual police officers were named but, no John Doe individual medical professionals of any kind. In the counts against the Inspira defendants and the health care provider defendants, the plaintiff never uses an individual John Doe pleading, and never uses any specificity with respect to said John Doe designations.

In <u>Greczyn v. Colgate-Palmolive</u> 183 N.J. 5 (2005), the Court discussed the use of the fictitious pleadings and whether it can serve to permit a plaintiff to name an unknown party after the statute of limitations has run. The court explained, "put another way, for the rule to operate, a specific claim must be filed, against a described though unnamed party within the statute of

limitations and plaintiff must diligently seek to identify the fictitiously named defendant." Id. at 11. Further, the Court clarified that, "It does not apply if the plaintiff has properly designated some defendants by fictitious names and then later discovers a cause of action against undescribed defendants who he then seeks to join." Id. at 10. That is precisely what the plaintiff is trying to do here. By virtue of his own words, plaintiff is trying to add a defendant about whom he was not previously trying to identify.

Nowhere in the original Complaint did plaintiff "describe" any physician or nursing defendants that he was simply unable to identify by name. Plaintiff simply named "John and Jane Does Police Officers 1-10 (fictitious individuals) in their individual capacities, John Doe Corporations 1-10 and John Doe Entities 1-10, all whose true names are unknown." (John Doe Recitation) This was the only Complaint that was filed within the statute of limitations. But regardless of same, plaintiff has never named a John Doe nurse or doctor in any of the three Complaints that were filed before the Third Amended Complaint adding Christal Hardin, RN as a defendant. Again, there are no described, though unnamed parties, pled in any of the prior complaints that could lead one to name Christal Hardin, RN as a defendant. She is not a corporation. She is not an entity. She is not a police officer.

Pleading John Doe entities, corporations and police officers in no way "describes" the party that is Ms. Hardin, as she is a nurse who provided medical care to the plaintiff decedent at Inspira Medical Center. The plaintiff is attempting to do exactly what the Greczyn, Court cautioned against by stating that a plaintiff may not identify new claims against "undescribed defendants" who he now seeks to join. This is neither appropriate nor permissible. That is an attempt to use the discovery rule to extend the Statute of Limitations. That is not available in the Wrongful Death Statute. For this reason alone, the defendant's motion to dismiss Christal Hardin, RN should be granted.

The next failure in plaintiff's claim is a lack that of due diligence. In no way, shape or form did the plaintiff satisfy the due diligence requirements of the John Doe rule. The Appellate Division discussed this issue (of adding physicians as John Does after the statute of limitations) in a very recent case known as <u>Baez v. Paulo,</u> 453 N.J. Super., 422 (App. Div. 2018). In that case, the Court discussed the issue of the late addition of several physician defendants to a lawsuit, when those defendants were clearly identified in the medical record. The trial court held that the statute had run, and the dismissal of the two defendants could have been appropriate, except that they activtely participated in the litigation and therefore, under principles of equitable estoppel and "the law of the case", the trial court denied their motions for dismissal on the basis of the statute of limitations. Those physicians appealed. The Appellate Division overturned this decision and in doing so specifically states,

> In essence, a plaintiff relying on a fictitious pleading must demonstrate **two phases** of due diligence in order to gain the tolling benefits of the rule. **First, a plaintiff must exercise due diligence in endeavoring to identify the responsible defendants before filing the original complaint naming John Doe parties. Second, a plaintiff must act with due diligence in taking prompt steps to substitute the defendant's true name, after becoming aware of that defendant's identity."** [emphasis added]. <u>Id</u>. at 439.

As discussed in <u>Baez</u>, the first phase of due diligence is that, "**a plaintiff must exercise due diligence in endeavoring to identify the responsible defendants before filing the original complaint naming John Doe parties."** Here, we know the plaintiff never requested the Inspira chart but, the plaintiff's representative Shane Gandy, testified at his deposition that the Estate was looking to hold the healthcare providers responsible and he sought out legal counsel shortly after the plaintiff's death.

With respect to phase two, it is undisputed that the first complaint filed by Mr. Benedetto's office was filed January 17, 2020, one day before the running of the two year statute of limitations.

Inspira Health Network is not named in the caption of that complaint. Inspira Medical Center is not named in the caption of that complaint. There is no reference to any Inspira defendant in the caption of that complaint. There is no reference to a John/Jane Doe nurse care provider who provided care to the plaintiff on January 9 and/or January 10, 2018, whose identity cannot be ascertained. There is no level of specificity in the caption with respect to a potential nurse defendant from Inspira. Plaintiff did not use due diligence in the interim. Plaintiff did not request a copy of the Inspira chart. Plaintiff did not request from Inspira counsel after our answer was filed, to identify any nursing personnel who cared for plaintiff during the visit of 1/9/18-1/10/18. The plaintiff's expert, Dr. Guzzardi, completed his review of a hospital record on 12/8/20, which plaintiff likely obtained from the Prosecutor's Office. This was two months after the defendant filed an Answer. As noted in the counterstatement of facts at Paragraph 23/24, Dr. Guzzardi raised no issues about Nurse Hardin.

Plaintiff's first amended complaint filed August 10, 2020, filed seven months after the Statute of Limitations expired, does contain in its caption a reference to "Inspira health Center Bridgeton, Mental Health Unit." It does not reference Inspira health Network, the proper corporate party. It does not reference Inspira Medical Center. It does not mention Bridgeton Medical Center. Plaintiff does not have any Inspira individual defendants via the John Doe designation.

With respect to the second amended complaint filed September 16, 2021, a review of the caption newly names "Inspira Inc. Patient Adult Behavioral Health, Bridgeton." The John Doe references are once again to John and Jane Does police officers 1-10 (fictitious individuals) in their individual capacities, John Doe Corporations 1-10 and John Doe entities 1-10, all those true names are unknown. There is no reference to any John/Jane Doe nurses, who cared for the plaintiff January 9, 2018, January 10, 2018 and whose identities are unknown.

Finally, the Third amended complaint filed November 23, 2021 names in its caption, "Inspira Inpatient Adult Behavioral health, Bridgeton" as the only Inspira entity. In addition to other specifically named physicians (not the subject of this motion), it carries over the same John Doe Recitation. There is again no reference to John/Jane Doe nurses, who cared for the plaintiff on January 9, 2018 or January 10, 2018 at Inspira Medical Center and whose true names are unknown.

Plaintiff had two years to obtain and review the medical records before the filing of the first Complaint in 2020. Had he done so, Christal Hardin, RN's identity and involvement would have been readily apparent. However, in terms of, "**exercise[ing] due diligence in endeavoring to identify the responsible defendants before filing the original complaint,**" neither plaintiff nor plaintiff's counsel ever requested Mr. Gandy's medical records from Inspira (Bridgeton or Vineland). Plaintiff specifically states in his opposition that he, "has not had the full benefit of having possession of all records which to this date Plaintiffs believe are still incomplete." This is proof positive of a lack of due diligence. All that the plaintiffs or his counsel had to do over the last three years was to request from Inspira a copy of Mr. Gandy's records. Attached as Exhibit A is an internal document from Inspira Health Network with respect to all individuals, and/or companies, who requested medical records of the plaintiff's decedent, Edward Gandy. Nowhere in that list, of nine requests, is there a request from the plaintiff's family and/or plaintiff's counsel. Between the dates of February 1, 2017 and December 7, 2020, records were requested nine times. You cannot fail to request the medical records in a medical negligence lawsuit and claim any right to argue that due diligence was undertaken. This equates to making no real effort to determine all of the appropriate parties. Now, after years of litigation, and after obtaining medical records from third parties, plaintiff has finally looked at them, and now has decided that additional parties could be named. This cannot be allowed and most certainly does not comport with the proper use of the John Doe rule.

What is most concerning, is that following Dr. Guzzardi's completed Affidavit of Merit on December 8, 2020, plaintiff took no action to amend the complaint to name Nurse Christal Harding until plaintiff filed his notice of motion to file a third amended complaint on November 5, 2021. Eleven months after plaintiff's expert completed his review of the medical chart, plaintiff first attempts to name Nurse Christal Harding as a defendant. Dr. Guzzardi is Board Certified in Family Practice, Emergency Medicine and Medical Toxicology. Nowhere in Dr. Guzzardi's 5 page Affidavit of Merit, does he state that the medical records are incomplete, inconclusive, illegible or in any way deficient for his review. Equally important, he offers an Affidavit of Merit which is completely devoid of any mention of nurse Hardin.

In plaintiff's opposition, the plaintiff argues compliance with two key components to qualify for the time tolling benefits of R. 4:26-4. Whether plaintiffs have acted with due diligence in :1) attempting to ascertain the true identity of a fictitious defendant before the statute of limitations has run, and thereafter, in 2) moving to seek to amend the complaint once that identify has been ascertained. Plaintiffs argue that they have met this standard. As noted above, there are several deficiencies with this argument. First, how can plaintiff argue that they have acted with due diligence in attempting to ascertain the true identify of a fictitious defendant when the defendant is a nurse, whose name appears in the medical chart, and the plaintiff never requested the medical records from Inspira?

Further, plaintiff states in the opposition that, "there are hundreds of pages of medical records in this matter which contain dozens of names of various doctors, nurses, and others, records that are unorganized, confusing, messy and incomplete." This is interesting because plaintiff never once asked to obtain the medical records directly from Inspira, but, waited until this litigation proceeded into the written discovery phase, and only then obtained them second hand from the

Prosecutor's Office. (The only third party to request records from Inspira.) This is in no way due diligence. Due diligence would have been to obtain the records from Inspira directly, and have them carefully reviewed by an expert BEFORE filing the original Complaint, and then if unsure of Nurse Hardin's identity, designate a Jane Doe RN who cared for plaintiff during the 1/9/18-1/10/18 hospital visit. Going through post complaint discovery and then realizing that you should have named additional parties is not due diligence and this is not how the John Doe rule works.

Plaintiff mistakenly relies on Baez indicating that the cases are similar and therefore this court's holding should be similar. In Baez v. Paulo, 453 N.J. Super., 422 (App. Div. 2018), the Court recognized that there was a misidentification as to which physician was the plaintiff's attending physician. Where is the misidentification in the Inspira records that specifically misled plaintiff's counsel into thinking that Ms. Christal Hardin was someone else who was not involved in Mr. Gandy's care? It does not exist.

Similarly, plaintiffs allege that defendant's reliance on the Burd case is misplaced. Plaintiffs write in the opposition that they, "are not arguing that they needed to talk to a lawyer first before knowing they had a claim, rather they simply argue that they didn't know the importance of a certain nurse to their case until certain facts were revealed during discovery that were not evident from the information they had when the original complaint was filed." If this were true, this is the discovery rule. The discovery rule is not available in a Wrongful Death claim. N.J.SA. 2A:31-1.3; Presslaff v. Robbins, 168 N.J. Super 543 (App. Div. 1979). The medical records were available to the plaintiff before the filing of the original complaint. They chose not to request them. Nobody identified Ms. Hardin in their discovery responses. Plaintiff's expert did not identify her "importance" when he reviewed the medical records to author the Affidavit of Merit back in December 2020. (Which would

still have been after the Statute of Limitation had run.) So what were these, "certain facts," that revealed the "importance of a certain nurse?" They do not exist.

Even more interesting, plaintiff states in the opposition that they are not stating that they did not know Nurse Hardin played a role in his treatment, just that they did not know the extent to which she was culpable." Greczyn, spoke to that. Plaintiff then states that he is not required to file suit against every person in the medical record. This is true. But what plaintiff is required to do, when hoping to later name a new party after the Statute of Limitations has run, is name John Does in the appropriate categories, with the appropriate specificity to prove they knew there was a certain individual whose name they just do not know at this point, and then use due diligence to discover their identity. The plaintiff never once, in all of the amended complaints, named a John/Jane Doe nurse, or doctor for that matter.

In sum, the plaintiff has failed to satisfy the requirements of R. 4:26-4, first in that he never appropriately described as Jane Doe RN/Nurse who cared for plaintiff at Inspira 1/9/18 visit, (Nurse Hardin) as required by the statute. In their Third Amended Complaint, they simply added a new defendant (Nurse Hardin) after the Statute of Limitations ran. Plaintiff is mis-using a John Doe claim against a newly, never before described defendant who was not suspected as a defendant. This is not sufficient to permit plaintiff to name Christal Hardin, RN more than two years after the expiration of the statute of limitations. This alone is reason enough to grant defendant's motion. Further, plaintiff has failed to complete any necessary due diligence to determine the involvement of all necessary parties, either before the filing of the original Complaint, or anytime thereafter. Again, to date, plaintiff has never, in these four years, requested medical records from the defendant facility. Records were eventually obtained and ultimately relied upon by Dr. Guzzardi, the affiant of plaintiff's original Affidavit of Merit. Nowhere in that Affidavit, does the affiant criticize the

composition of the records, nor does he opine the records are incomplete or misleading. Most importantly, nowhere does he say there is a nurse who saw plaintiff at Inspira on the 1/9-1/10, visit whose care was negligent "but, I can't identify her by name at this point." The plaintiff did not name Inspira Health Network or Inspira Medical Center in his original Complaint.

The plaintiff did not originally appropriately describe or identify Nurse Hardin in the fictitious pleadings that he pled. Further, the plaintiff did not complete any due diligence with regard to trying to determine her involvement before the expiration of the statute of limitations, or at any time thereafter. Lastly it must be noted, plaintiff alleges that the defendant will not be prejudiced. This is not true. There is a two year statute of limitations for a reason. More than four years have now passed. Memories fade. Information Ms. Hardin may have remembered previously she will not now. Specifically here where the plaintiff's allegation appears to be that she failed to tell her oncoming shift about a time deadline, which if it were true, would be something nurses do in a verbal report to each other at shift change. Recalling such a conversation four plus years later is next to impossible. She is absolutely prejudiced by her addition to this case a defendant more than four years after the alleged negligence occurred.

For the all foregoing reasons, it is respectfully requested that defendant's motion to dismiss Christal Hardin, RN be granted by this Court.

Respectfully,

MICHAEL G. HALPIN, ESQ.

MGH/nf
cc:   Counsel of Record