## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| The Estate of Edward C. Gandy, Jr., by | : | |
| and through its administrator Ad | : | **CIVIL ACTION** |
| Prosequendum, Shane S. Gandy and | : | |
| Shane S. Gandy, in his own right, | : | INDEX NUMBER |
| *Plaintiff* | : | |
| | : | 1:20-cv-00641-NLH-AMD |
| vs. | : | |
| City of Millville, Millville Police Department | : | |
| Police Chief Jody Farabella, in his individual | : | |
| capacity, Police Officer Colt Gibson, in his | : | |
| in his individual capacity, Cumberland County | : | |
| Guidance Center, Cumberland County Mental | : | |
| Health & Crisis Screening Facility, Dr. Victoria | : | |
| Eligulashvili, MD, Christal Hardin, RN, Marie | : | |
| Hasson, M.D., in her individual capacity, Center for | : | |
| Family Guidance, P.C., John and Jane Does Center | : | |
| For Family Guidance, P.C. 1-10 (fictitious | : | |
| individuals), Inspira Inpatient Adult Behavioral | : | |
| Health, Bridgeton, Dr. Victoria Eligulashvili, in her | : | |
| individual capacity, Stephen Marc Scheinthal, DO | : | |
| in his individual capacity, Dr. James J. Rogers, | : | |
| DO, in his individual capacity, John and Jane Doe | : | |
| Police Officers 1-10 (fictitious individuals) in their | : | |
| individual capacities, John Doe Corporations 1 | : | |
| through 10, and John Doe Entities 1 through 10, | : | |
| all whose true names are unknown, | : | |
| *Defendants* | : | |
| | : | |

## PLAINTIFFS ESTATE OF EDWARD C. GANDY, JR. AND SHANE GANDY'S OPPOSITION TO DEFENDANTS' STEPHEN MARC SCHEINTHAL AND JAMES J. ROGERS MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS AND PROCEDURAL HISTORY ........................................................................... 1

LEGAL ARGUMENT .......................................................................................................... 8

    I.    LEGAL STANDARD ............................................................................................ 8

    II.    PLAINTIFFS' SUMMONS MEETS THE REQUIREMENTS UNDER COURT RULE ..................................................................................................................... 9

    IV.    THE MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS PROPERLY ADDED FICTIOUS DEFENDANTS AND COULD NOT ASCERTAIN DEFENDANT'S IDENTIY AS A DEFENDANT UNTIL AFTER DISCOVERY HAD COMMENCED, AND THERE IS NO PREJUDICE TO DEFENDANT. ......................... 13

CONCLUSION ..................................................................................................................... 23

## TABLE OF AUTHORITIES

Cases

Abboud v. Viscomi, 111 N.J. 56, 62 (1988) ............................................................... 13

Baez v. Paulo, 453 N.J. Super. 422, 437 (App. Div.), *appeal denied*, 235 N.J.107 (2018) .. 15, 16, 17, 18

Bair v. City of A. City, 100 F. Supp. 2d 262, 265 (D.N.J. 2000) .................................. 9

Barrentine v. New Jersey Transit, 2013 WL 4606781, at *4–10 (D.N.J. Aug. 28, 2013)............ 10

Browning v. Safmarine, Inc., 287 F.R.D. 288 (D.N.J. 2012) ................................... 18, 19

Caravaggio v. D'Agostini, M.D., 166 N.J. 237, 248. (2001).......................................... 14

Claypotch v. Heller, Inc., 823 A.2d 844, 850 (N.J. Super. App. Div. 2003).............................. 21

Costa v. J. Fletcher Creamer & Sons, Inc., 2018 WL 3756445, at *3 (D.N.J. Aug. 8, 2018)...... 20

Cruz v. City of Camden, 898 F. Supp. 1100 (D.N.J. 1995)............................................. 19

Dunkley v. Rutgers, 2007 WL 2033827, at *1–5 (D.N.J. July 11, 2007)................................. 10

Farrell v. Votator Div. of Chemetron Corp., 299 A.2d 394, 400 (N.J. 1973)...................... 20, 21

Feinsod v. Noon, 261 N.J. Super. 82 (App. Div.1992)................................................... 13

Gallagher v. Burdette–Tomlin Memorial Hospital, 163 N.J. 38, 43 (2000)................................ 13

Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 192 (1980) ................................ 13

Garvin v. City of Philadelphia, 354 F.3d 215, 222–23 (3d Cir. 2003) ................................ 19

Glymph v. D.C., 180 F. Supp. 2d 111, 113 (D.D.C. 2001) ............................................. 8

Gonzalez v. Thomas Built Buses, Inc., 268 F.R.D. 521, 526 (M.D.Pa. 2010) ............................ 10

Green v. Humphrey Elevator & Truck Co., 816 F.2d 877, 880 (3d Cir.1987)............................. 10

Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)...................................................... 8

Jones v. Jones, 242 N.J. Super. 195, 203 (App. Div.1990) ............................................ 13

Krupski v. Costa Crociere S.P.A., 560 U.S. 538, 541 (2010)......................................... 19, 20

Lebron v. Sanchez, 407 N.J.Super. 204, 215–16 (App. Div. 2009) ..................................... 22

Martinez v. Cooper Hospital–University Medical Center, 163 N.J. 45, 55 (2000) ...................... 14

Matynska v. Fried, 175 N.J. 51, 52-54 (2002)....................................................... 15

MCI Telecom. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir.1995)......................... 10

Miller v. Warren Hosp. IPA, 2016 WL 3509305, at *3–4 (D.N.J. June 27, 2016) ....................... 20

MSKP Oak Grove, LLC v. Venuto, 2014 WL 4385979, at *9–10 (D.N.J. Sept. 5, 2014) ......... 18

Newberry v. Township of Pemberton, 319 N.J.Super. 671 (N.J.Super.A.D.,1999)................... 22

Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 499, 888 A.2d 464 (2006).............................. 18

Otchy v. City of Elizabeth Bd. of Educ., 325 N.J. Super. 98, 108, 737 A.2d 1151 (App. Div.1999) ................................................................................................ 19

Rosenberg v. Englewood Hosp. and Med. Ctr., Inc., A-4525-16T4, 2019 WL 1306268, at *5–6 (N.J. Super. App. Div. Mar. 21, 2019)................................................... 15, 18

Savage v. Old Bridge–Sayreville Medical Group, P.A., 134 N.J. 241, 633 (1993) .................... 14

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)........................................................... 8

Schiavone v. Fortune, 477 U.S. 21, 29 (1986)......................................................... 19

Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 195 (3d Cir.2001)................................... 19

Spence v. LaHood, 2012 WL 2076838, at *3–8 (D.N.J. June 8, 2012) ................................ 10, 11

Viviano v. CBS, Inc., 101 N.J. 538, 547 (1986)............................................. 8, 13, 14, 15, 20, 21

Walters v. Breathless 2000, 2010 WL 4103683, at *8 (N.J. Super. App. Div. July 23, 2010) ... 19

Worthy v. Kennedy Health Sys., 446 N.J. Super. 71, 89-90 (App. Div. 2016)...................... 15, 21
Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 488–90 (D.N.J. 2002)............................ 14
Zaccardi v. Becker, 88 N.J. 245, 258–259 (1982) ....................................................................... 13

Rules

F.R.C.P 12(b)(6) ............................................................................................................................. 8
F.R.C.P. 15(c)(1)............................................................................................................. 8, 9, 18, 19
F.R.C.P. 8(a)(2)............................................................................................................................... 8
Federal Rule of Civil Procedure 4(m)........................................................................... 9, 10, 12
Rule 1:1–2 ..................................................................................................................................... 20
Rule 4:26-4.......................................................................................................... 9, 15, 20
Rule 4:9-3......................................................................................................................... 8, 18

## PRELIMINARY STATEMENT

Defendants Stephen Marc Scheinthal, DO and James A. Rogers, DO ("Defendants") attempt to avoid answering Plaintiffs the Estate of Edward C. Gandy, Jr. and Shane Gandy's ("Plaintiffs") legitimate amended complaint naming them as defendants (the "Amended Complaint") on technical grounds. However, as none of Defendants' arguments have merit, Defendants' motion to dismiss (the "Motion") must be denied.

## FACTS AND PROCEDURAL HISTORY[1]

On January 22, 2018, the decedent, Edward C. Gandy, Jr. ("Decedent"), with a date of birth of July 7, 1971, was a resident of the City of Millville, Cumberland County, with an address of 707 Dock Street, Millville, New Jersey 08332. Prior to January 22, 2018, Decedent had a history of mental health issues, including exhibiting suicidal tendencies. Decedent was well-known by the Defendant Millville Police Department, Defendant Officer Gibson and other police officers based on his numerous previous encounters with the Millville Police. He was also well known to Defendant Inspira Inpatient Adult Behavioral Health, Bridgeton ("Inspira") and its providers, including Defendants.

On January 22, 2018, at approximately 10:45 a.m., the decedent Edward C. Gandy, Jr. was standing in the empty parking lot of the Rite Aid Pharmacy located on the corner of North High and McNeal Streets in the City of Millville. On or about said date and time, a 911 call was placed, and police were dispatched to the location of North High and McNeal Streets.

---

[1] The facts are taken directly from the Third Amended Complaint, edited to the relevant facts here. See Third Amended Complaint ("Amended Complaint") attached to the Certification of Andrew Smith ("Smith Cert.") as Exhibit A.

Upon their arrival, at least three Millville police officers, including Defendant Police Officer Colt Gibson, arriving in at least two police cruisers, encountered Decedent. At approximately 10:49 a.m., Millville police officers, including Defendant Police Officer Colt Gibson, discharged their weapons at least three times mortally wounding the Decedent.

Decedent was transported by ambulance to Inspira Medical Center in Vineland, New Jersey where he was pronounced dead. Decedent's Certificate of Death lists the cause of death as multiple gunshot wounds. In the days prior to January 22, 2018, Decedent was discharged from the care of Defendant Inspira and/or from Defendants, Dr. Marie Hasson, MD, Dr. Victoria Eligulashvili, MD, and Christal Hardin, R.N. Defendants had a duty to provide Decedent with proper care and treatment for his mental health condition and suicidal tendencies while he was in her care, and to keep Decedent safe from injury, harm and death.

Defendants negligently handled, treated and cared for Decedent, and/or improperly discharged decedent, despite his mental health condition. In doing so, Defendants breached their legal duty to keep Decedent safe from injury, harm and death. The above-described acts and omissions by Defendants demonstrated negligence, carelessness and inattention and/or indifference to and a conscious disregard for the mental health history, prior suicidal history and/or overall safety of the decedent which she was aware of or should have been aware of, and/or duty to keep Decedent safe from injury, harm and death.

Decedent was treated by Inspira and/or Defendants on an outpatient basis from February 26, 2014, to January 18, 2017 for anxiety, depression, bipolar disorder, and other mental health conditions. He was apparently last evaluated by Inspira and/or Defendants on January 18, 2018. He was killed because of police actions on January 22, 2018. Decedent

was seen for mental health evaluations directly relevant to the instant matter on four occasions between November 16, 2017, and January 11, 2018.

According to the documentation for his November 16, 2018 psychiatric screening, Decedent was escorted to the Inspira psychiatric screening center by the police following suicidal statements made by him when alleged romantic advances made towards a pharmacy employee did not receive a favorable response.  The employee retreated to a back room of the pharmacy as other employees requested that Decedent leave the store.  Decedent verbally expressed anger and made statements of self-harm.  The police were called.

During the screening, Decedent denied intent to harm himself.  The screener documented that Decedent was linked to mental health services, had an effective support system, and had access to mental health care.  On November 16, 2017, Decedent was discharged to the community with a recommendation to reschedule a missed outpatient appointment with Inspira.

On November 26, 2017, another female staff at a pharmacy perceived that Decedent was making romantic advances towards her. The female pharmacy staff retreated to an employee section of the pharmacy and the manager requested that Decedent leave the store and not return.  Decedent went to the police station to report he was misunderstood and wanted assistance to correct the misunderstanding.  The police directed Decedent to go home.  Decedent returned to the police station with a knife.  Mr. Gandy threatened to kill himself.

Decedent was transferred to the lnspira for additional mental health screening and for his personal and community safety.  During the mental health screening with Inspira, Decedent

3

denied intent to harm himself. Decedent was discharged home with a recommendation to continue outpatient treatment.

On November 29, 2017, Decedent went to a pharmacy to pick up prescribed medications.  Decedent was instructed to leave the pharmacy due to the prior  incident on November 16, 2017.  The police were called.  When the police arrived, Decedent became more agitated and told the police to shoot him. The police encouraged the pharmacist to give Decedent the medication.  Decedent was again transported for mental health screening with Inspira.  Decedent reported that he told the police to shoot him out of frustration, but he was not suicidal.

On January 2, 2018, Decedent cancelled a follow-up outpatient medication monitoring appointment at Inspira.  On January 9, 2018, Decedent was again screened by Inspira. This was due to incidents which occurred on January 8, 2018, and January 9, 2018 when Decedent had another confrontation at a pharmacy that resulted in him yelling and acting out.  After the incident on January 8, Decedent went home, and the police visited him at home.  The following day, on January 9, 2018, Decedent went to Wawa with a knife and told a gas attendant that he was suicidal. When the police arrived, Decedent asked the police to shoot him.

Decedent  was transported  to the Inspira for psychiatric screening. The screening apparently included an assessment by Decedent although the records state "no records found." The screener apparently determined that Decedent was impulsive, agitated and expressed paranoid thoughts.  During  the  screening  process,  Inspira security  personnel  intervened because of Decedent's agitated behaviors.

Decedent was retained for about 55-60 hours at Inspira for psychiatric evaluation. The legal status for his retention in the Emergency Department is not currently clear. No testing was ordered to evaluate Decedent's compliance with medication and there is no documentation that questions about compliance were asked.

The following morning, on January 10, 2018, Decedent was reevaluated at Inspira. The screener documented that Mr. Gandy remained impulsive, and easily agitated with the inability to make rational decisions. Decedent denied suicidal ideations, requested discharge to seek employment in the community and care for his pets. The screener discussed the case with a psychiatrist who apparently recommended that Decedent continue treatment in the screening center and receive reevaluation later that day.

Decedent was almost discharged from Inspira at that time. However, Sergeant Jenn Sataro of the Millville Police Department had called Ms. Jennifer White, Defendant Cumberland County Guidance Center ("CCGS") Clinical Director of CCGS, at home and described Decedent's aberrant behaviors. The decision to discharge was changed. Sergeant Sataro had training in mental health issues that brought individuals to the attention of the police department.

At 8:45 a.m. on January 10, 2018, Defendant Hasson directed that Decedent be admitted for involuntary mental health inpatient and documented her evaluation. At 5:45 p.m. on January 10, 2018, after a face-to-face interview, Defendant Rogers directed that Decedent be admitted to the facility. Defendant Eligulashvili, an Emergency Physician working at Inspira, documented at 12:46 a.m. on January 11, 2018 an order by Defendant Scheinthel to admit Decedent for involuntary mental health inpatient treatment.

Two CCGC employees documented that CCGC was aware that Decedent was to be involuntarily admitted for mental health treatment. Defendant Christal Hardin, R.N., an Emergency Nurse employed by Inspira documented at 10:15 p.m. on January 10, 2018, that Decedent had to be admitted to a psychiatric facility by 5:31 p.m. on January 11, 2017 due to the New Jersey regulations concerning involuntary confinement.

When arrangements were finally made for an attempted involuntary admission to a mental health facility at some time after 5:31 p.m., CCGC and Inspira were notified by "Dan" at Value Options that Decedent could not be admitted because the time for involuntary evaluation had expired. It is unknown at this time from hospital records and from CCGS records what transpired from the time of Decedent's discharge from the Emergency Department on January 11, 2018, until the police incident on January 22, 2018 except for a log notation that Decedent received some services from CCGC on January 18, 2018.

Plaintiff Shane Gandy and his sister first contacted Plaintiffs' counsel regarding the issue of their brother's death in January of 2020. Certification of Conrad J. Benedetto ("Benedetto Cert.") at 3. The clients retained Plaintiffs' counsel with their concerns focused on claims for police use of excessive and deadly force. Id. Without the benefit of having the opportunity to review medical records, but being advised by Plaintiffs that Edward Gandy, Jr. had contacts with the Cumberland County Guidance Center, it also was named in the original complaint. Id.

On August 27, 2020, Plaintiffs' First Amended Complaint was filed following discussions with counsel for Cumberland County Guidance Center regarding his client's role in the care and follow up of Edward Gandy, Jr. Id. at 4. The medical records available at the time, and the medical records in general here, are completely unorganized, confusing, messy, and incomplete. Id. at 5.

It was not until August 24, 2021, that Plaintiffs received additional records from Defendant Inspira. Id. at 6.  Around that same time, counsel for Plaintiffs had additional discussions with the attorney for CCGC regarding which individuals were employed by which entity.  Id. at 7.  In addition, counsel for Inspira identified one doctor who he was unsure of the doctor's employer/employee relationship with his client, and he indicated that he believed other defendants should be added to the lawsuit.  Id.

As such, a review of the available medical records was made by Plaintiffs' legal team, including their expert.  Id. at 8.  There also were further discussions with counsel, and conferences with the Court, from which it became clear at least Dr. Marie Hasson should be added as a defendant.  Id. at 9.  As a result of those discussions, the suggestion of the Court, and a review of the documents, a Motion to file Second Amended Complaint was filed on September 3, 2021 that included a copy of the proposed Second Amended Complaint.  Id. at 10.

Thereafter, on September 15, 2021, the City of Millville produced hundreds of pages of additional discovery.  Id. at 11.  Upon review of new documents, and further review of the Inspira documents and other medical records, it became apparent that other individuals were responsible, in whole or in part, for the events leading up to Decedent's death, including Defendants.  Id. at 12.

Therefore, between September 16, 2021 and November 5, 2021, the available medical records were discussed and reviewed by Plaintiff's expert, Plaintiff Shane Gandy was consulted, and a Notice of Motion for Leave to file a Third Amended Complaint was filed on November 5, 2021 that included a copy of the proposed Third Amended Complaint. Id. at 13.  Plaintiffs received the Order granting permission to file the Third Amended Complaint, which was filed on November 23, 2021.  Id. at 14.  Lawrence Guzzardi, MD had begun working on the Affidavit of Merit in

September of 2021 and said Affidavit was finalized in October of 2021.  Id. at 15.  For the reasons

to be discussed at length below, the Motion must be denied.

## LEGAL ARGUMENT

### I.      LEGAL STANDARD

To have a complaint dismissed under F.R.C.P 12(b)(6), Defendants must prove that

Plaintiffs failed to state a claim under which any judicial relief could be granted.  The U.S. District

Court for the District of Columbia reiterated the standard under F.R.C.P. 8(a)(2), stating, "For a

complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain

statement of the claim and the grounds on which it rests."  Glymph v. D.C., 180 F. Supp. 2d 111,

113 (D.D.C. 2001).  The Glymph Court went on to explain that the purpose of F.R.C.P. 12(b)(6)

is not "whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly

stated a claim."  Id.  A court can only dismiss a complaint for failure to state a claim if it is clear

that no relief could be granted under any set of facts.  Hishon v. King & Spalding, 467 U.S. 69, 73

(1984).  The court must accept all the well-pled factual allegations in a plaintiff's complaint as

true.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

A complaint may be dismissed under F.R.C.P 12(b)(6) if the filing violates the applicable

statute of limitations.  However, the discovery rule suspends the statute of limitations "when the

plaintiff is unaware of his or her injuries or of the culpability of another."  Viviano v. CBS,

Inc., 101 N.J. 538, 547 (1986).  New Jersey Court Rule 4:26-4 to allow "a plaintiff who institutes

a timely action against a fictitious defendant to amend the complaint after the expiration of

the statute of limitations to identify the true defendant."  Id. at 548.  Further, amendments to

pleadings after the expiration of the statute of limitations are allowed if the amendments in question

relate back to the original pleading.  F.R.C.P. 15(c)(1); New Jersey Court Rule 4:9-3.  Here,

Plaintiffs were not aware of the culpability of Defendants until discovery progressed such that the discovery rule, New Jersey Court Rule 4:26-4 applies, and the properly served claims related back under Rule 15(c)(1).  Therefore, for the reasons to be further articulated below, the Motion must be denied.

## II.   PLAINTIFFS' SUMMONS MEETS THE REQUIREMENTS UNDER COURT RULE

Defendants seek the ultimate form over substance dismissal, arguing that the summons it was served was improper.  However, that is simply not the case.  Plaintiffs obtained the proper summons, and as such, Defendants' argument fails.  See Summons, attached to Smith Cert. as Exhibit F.  Moreover, even if it did not, the relief would be to allow a proper summons to be served, rather than dismiss with prejudice.  Bair v. City of A. City, 100 F. Supp. 2d 262, 265 (D.N.J. 2000) (The courts strive "to ensure that claims will be decided on the merits rather than on technicalities.").  Therefore, the Motion must be denied.

## III.   THERE IS GOOD CAUSE TO ALLOW FOR AN EXTENSION OF THE TIME FOR SERVICE UPON THE DEFENDANT

Federal Rule of Civil Procedure 4(m) sets a time limit to serve a complaint.  F.R.C.P. 4(m).  However, the Rule specifically states that "if the plaintiff shows good cause for the failure [to serve], the court must extend time for service."  See id.  "The Federal Rules of Civil Procedure do not anticipate rigid enforcement [of the service requirement].  Rule 4(m) specifically allows the Court to extend the time for service at its discretion when good cause … exist[s].  In such exercise of discretion, it is important to balance adherence to procedure with the importance of equitable outcomes.  The Federal Rules of Civil Procedure are to be applied in such a way as to promote

justice." <u>Spence v. LaHood</u>, 2012 WL 2076838, at *3–8 (D.N.J. June 8, 2012) ("The preference of this Court must always favor allowing cases to reach their merits if possible").

"Once it has been determined that the plaintiff has failed to serve the defendant within 120 days of filing the complaint, a district court may determine whether an extension of time for service is warranted." <u>Gonzalez v. Thomas Built Buses, Inc.</u>, 268 F.R.D. 521, 526 (M.D.Pa. 2010). The Third Circuit "has set forth a two-pronged standard of review to determine whether granting an extension of time to serve is proper under Rule 4(m), which provides for both mandatory and discretionary extensions." <u>Id.</u>

Here, despite the Plaintiffs delay in filing service of process against Defendants, the court has yet to administratively dismiss or enter default regarding Plaintiffs' claims against them. <u>See</u> Smith Cert. at 3.   A finding of good cause "must" result in an extension of time for the service of process. <u>See</u> F.R.C.P. 4(m).  Factors used in the determination of "good cause" include: "(1) [the] reasonableness of plaintiff's efforts to serve, (2) prejudice to the defendant by lack of timely service, and (3) whether plaintiff moved for an enlargement of time to serve." <u>MCI Telecom. Corp. v. Teleconcepts, Inc.</u>, 71 F.3d 1086, 1097 (3d Cir.1995).

Courts primarily focus, however, is on the plaintiff's reasoning for the delay. <u>Barrentine v. New Jersey Transit</u>, 2013 WL 4606781, at *4–10 (D.N.J. Aug. 28, 2013).  Rule 4(m)'s "good cause" provision protects "diligent plaintiffs who, though making every effort to comply with the dictates of the rule, nonetheless exceed the 120–day limit for service [of process]." <u>Green v. Humphrey Elevator & Truck Co.</u>, 816 F.2d 877, 880 (3d Cir.1987).  Even in situations wherein courts decide to quash a summons and complaint that is deemed deficient, they have also refused to dismiss the matter and instead simply given the plaintiff additional time to effect proper service. <u>Dunkley v. Rutgers</u>, 2007 WL 2033827, at *1–5 (D.N.J. July 11, 2007) ("Courts have also noted

that the expiration of the statute of limitations does not prohibit a district court from extending time for service of process"); <u>Spence v. LaHood</u>, 2012 WL 2076838, at *3–8 (D.N.J. June 8, 2012) ("Allowing this case to proceed would not create so large or unfair a burden on Defendants as to justify denying Plaintiffs the chance for her case to proceed at this stage.").

Here, Plaintiffs acted with due diligence in attempting to serve the Amended Complaint on Defendants. <u>See</u> Smith Cert. at 4. Plaintiffs' original counsel attempted to serve the Amended Complaint through a normal process server. Smith Cert. at 5. However, the process server was unable to serve the complaint despite repeated attempts and submitted at affidavit of due diligence regarding the same. Smith Cert. at 5; Exhibit B to Smith Cert. Thereafter, Plaintiffs hired additional counsel and a case management conference was held. Smith Cert. at 6. At that time, counsel informed the Court of the issues with service and the existence of the affidavits of due diligence. Smith Cert. at 7. Thereafter, original counsel continued to attempt to serve Defendants, but was unable to do so. Smith Cert. at 8. As such, Plaintiffs' new counsel hired a private investigator and former police officer to serve the Amended Complaint on Defendants. Smith Cert. at 9. Despite facing significant issues with service, he was eventually able to do so on July 29, 2022 and August 2, 2022 respectively. <u>See</u> Certification of Kevin Foley ("Foley Cert.") attached to Smith Cert. as Exhibit C. As he noted, Inspira made it extremely difficult to serve Defendants, and had he not been a trained police officer, he might not have been able to ultimately serve Defendants. <u>See</u> <u>id.</u> As such, good cause exists such that the time for service should be

extended, to the extent it has to be given that the Amended Complaint was never dismissed as to Defendants.[2]  See id.; F.R.C.P. 4(m).

Extensions have also been granted wherein the defendant fails to adequately show that he they have been "prejudiced by the delay in service or that its ability to defend on the merits has been detrimentally impacted." See Connolly v. Mitsui O.S.K. Lines (Am.), Inc., CIV.A.04-CV-5127(JLL, 2006 WL 2466848, at *6 (D.N.J. Aug. 24, 2006). "The fact that Defendants would have to defend against a lawsuit that would otherwise be dismissed and time-barred by a statute of limitations is not sufficient by itself to establish prejudice." Spence v. LaHood, 2012 WL 2076838, at *3–8 (D.N.J. June 8, 2012); see also Boley v. Kaymark, 123 F.3d 756, 759 (3d Cir.1997), quoting Nat'l Union Fire Ins. Co. v. Barney Assoc., 130 F.R.D. 291, 294 (S.D.N.Y.1990) ("[P]rejudice 'involves impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage.'").

Here, the couple month delay in service has not prejudiced Defendants.  While depositions have taken place during that timeframe, Defendants' counsel was given the opportunity to participate in some depositions prior to filing the Motion.  See Smtih Cert. at 11.  Moreover, there are two (2) other medical defendants who were added with them, necessitating additional time for all the new defendants to conduct whatever discovery is necessary.  See Smith Cert. at 12.  As such, for all the above reasons, the Motion must be denied.

---

[2]    Rule 4(m) states that if a defendant is not served timely, "the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service…" See F.R.C.P. 4(m) (emphasis added).  However, here, the Court never dismissed the Amended Complaint or ordered service within a specified time.  As such, there is no violation of the time for service here that would allow dismissal with prejudice.

**IV.    THE MOTION TO DISMISS MUST BE DENIED BECAUSE PLAINTIFFS PROPERLY ADDED FICTIOUS DEFENDANTS AND COULD NOT ASCERTAIN DEFENDANT'S IDENTIY AS A DEFENDANT UNTIL AFTER DISCOVERY HAD COMMENCED, AND THERE IS NO PREJUDICE TO DEFENDANT.**

Defendants attempt to dismiss Plaintiffs' claims as being time-barred.  For the purposes of this motion, Plaintiffs will concede that the applicable statute of limitations here is two (2) years. However, courts have recognized that the "[u]nswerving, mechanistic application of statutes of limitation would at times 'inflict obvious and unnecessary harm upon individual plaintiffs' without materially advancing the objectives they are designed to serve." Jones v. Jones, 242 N.J. Super. 195, 203 (App. Div.1990), *citing* Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 192 (1980); Zaccardi v. Becker, 88 N.J. 245, 258–259 (1982), *superseded on other grounds by* Feinsod v. Noon, 261 N.J. Super. 82 (App. Div.1992).  In New Jersey, it "is now well settled ... that statutes of limitation will not be applied when they would unnecessarily sacrifice individual justice under the circumstances."  Zaccardi, 88 N.J. at 258–259.

The discovery rule suspends the statute of limitations "when the plaintiff is unaware of his or her injuries or of the culpability of another."  Viviano v. CBS, Inc., 101 N.J. 538, 547 (1986). The statute of limitations may begin to run at different times for different defendants.  See Gallagher v. Burdette–Tomlin Memorial Hospital, 163 N.J. 38, 43 (2000) (holding that "[t]he benefit of the discovery rule should be available to this plaintiff who remained reasonably "unaware ... that the injury [wa]s due to the fault or neglect of an identifiable individual or entity."), *citing* Abboud v. Viscomi, 111 N.J. 56, 62 (1988). Within the New Jersey Supreme Court's "discovery rule" jurisprudence, there is a sub-category of the "knowledge of fault" cases in which "a plaintiff knows she has been injured and knows the injury is the fault of another, but does not know that an additional third party was also responsible for her plight."  See Caravaggio v.

D'Agostini, M.D., 166 N.J. 237, 248. (2001); see also Yarchak v. Trek Bicycle Corp., 208 F. Supp. 2d 470, 488–90 (D.N.J. 2002). The New Jersey Supreme Court emphasized that "when a plaintiff knows of an injury, and knows that it is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against the third party until plaintiff has evidence that reveals his or her possible complicity." See Caravaggio, 166 N.J. at 250; see, e.g. Martinez v. Cooper Hospital–University Medical Center, 163 N.J. 45, 55 (2000) (applying the discovery rule where wife of a man who had suffered a severe beating and whose death was officially recognized as a homicide was not in emergency room when her husband was admitted and had been assured by emergency room physician that everything had been done properly and therefore had no reason to suspect that the delay in treatment had contributed to her husband's death); Savage v. Old Bridge–Sayreville Medical Group, P.A., 134 N.J. 241, 633 (1993) (finding discovery rule applicable where plaintiff was aware that she had suffered injury and that medication was the likely cause of the injury, but the record did not reveal that she was or should have been aware that a lack of care in administering the medication was also a cause of her condition).

Here, while Plaintiffs had medical records, they were not aware that Defendants were "culpable" until after discovery. See Benedetto Cert., attached to Smith Cert. as Exhibit E. The case as it was presented to Plaintiffs was primarily an excessive force lawsuit involving a police shooting. Benedetto Cert. at 3. However, shortly after the case was sent to Plaintiffs' current attorney, he discovered that there may be culpability of medical professionals who had seen the Decedent prior to the shooting. Id. As such, "[P]laintiff[s] [were] unaware of … the culpability of [Defendants]" such that the statute of limitations was suspended. See Viviano, 101 N.J. at 547.

Therefore, based on the "discovery rule," which Defendants do not address, the Motion must be denied.  See id.

Further, similar to the discovery rule, the New Jersey Supreme Court contemplated this exact scenario when it implemented Rule 4:26-4 to allow "a plaintiff who institutes a timely action against a fictitious defendant to amend the complaint after the expiration of the statute of limitations to identify the true defendant." Id. at 548.  Courts have made clear that identifying a defendant does not necessarily mean that the defendant was completely unknown; rather, identifying means ascertaining the identity of someone who is culpable.  Rosenberg v. Englewood Hosp. and Med. Ctr., Inc., A-4525-16T4, 2019 WL 1306268, at *5–6 (N.J. Super. App. Div. Mar. 21, 2019).  "When this procedure is properly utilized, [the] 'an amended complaint identifying the defendant by its true name relates back to the time of filing of the original complaint.'" Baez v. Paulo, 453 N.J. Super. 422, 437 (App. Div.), *appeal denied*, 235 N.J.107 (2018), *citing* Viviano, 101 N.J. at 548.  A key consideration as to whether a plaintiff is entitled to the time-tolling benefits of Rule 4:26-4 is whether the plaintiff or the plaintiff's counsel have acted with due diligence in: (1) attempting to ascertain the true identity of a fictitious defendant before the statute of limitations has run, and, thereafter, in (2) moving to seek to amend the complaint once that identity has been ascertained.  Id. at 439; see also Matynska v. Fried, 175 N.J. 51, 52-54 (2002); Worthy v. Kennedy Health Sys., 446 N.J. Super. 71, 89-90 (App. Div. 2016).  Applying this standard, Plaintiffs have met the requirements for amendment.

Defendants argue that Plaintiffs do not meet the requirements for R. 4:26-4.  However, Plaintiffs clearly exercised the requisite "due diligence" prior to filing suit.  Id.  Again, the case as it appeared to Plaintiffs was primarily an excessive force lawsuit involving a police shooting. Benedetto Cert. at 3.  It was not until much more recently that counsel, after discovery was

15

conducted, discovered that there may be culpability of medical professionals who had seen the Decedent prior to the shooting.  Id.  As such, in the limited time Plaintiffs' original counsel had prior to the statute of limitations running and based on the few bare records reviewed, he filed a complaint which included the only medical entity known at the time and fictitious defendants, as required per R. 4:26-4.  Id.   At that point, Plaintiffs exercised due diligence as required.  Baez, 453 N.J. Super. at 437.   Further, shortly after filing Plaintiffs' counsel faced staffing and administrative delays caused by the Covid closures which further delayed his ability to ascertain the identity of Defendants.  Benedetto Cert. at 16.

Regardless of whether records available at the time of the original complaint contained the names of Defendants, it was not clear from the records the extent of the role each played in Decedent's treatment.  The records themselves are messy, confusing, and missing key elements. Id. at 5.  Moreover, at the time the original complaint was filed, Plaintiffs did not have all the medical records or any discovery documents at all, including documents relevant here like standard operating procedures.  Id. at 6, 11; Exhibit C to Benedetto Cert.  Plaintiffs' counsel has not had the full benefit of having possession of all records which to this date, which Plaintiffs believe still are incomplete.  Id. at 16.  In fact, Plaintiffs received discovery responses, records and standard operating procedures on August 24, 2021.  Id. at 6; Exhibit C to Benedetto Cert.  Further, they received hundreds of pages of documents from the Defendant City of Millville on September 15, 2021.  Id. at 11.  As such, it was not until a review of these new documents, the conversations with opposing counsel, conferences with the Court, and consultation with their expert that Plaintiffs became aware of other specific individuals who might be liable.  Id. at 6-13.  Immediately after this became apparent, Plaintiffs filed to amend the complaint to add Defendants.  Id. at 10, 13.

As such, Plaintiffs "took prompt steps to substitute the defendant's true name, after becoming aware of that defendant's identity" in that he filed for amendment promptly after discovering the true nature of Defendants' role. Baez, 453 N.J. Super. at 422. Therefore, Plaintiffs and their counsel exercised due diligence both in attempting to ascertain the true identity of a fictitious defendant before the statute of limitations has run, and in moving to seek to amend the complaint once that identity has been ascertained. See id.

This case is similar to Baez, where the Court allowed the plaintiff to amendment to add other defendants even after the statute of limitations had run because it unclear from the records what the defendants' actual role was in the plaintiff's treatment. See id. In Baez, there was a misidentification in the records about which doctor was the plaintiff's "attending physician." This led the court to believe that it would be unfair to dismiss the doctors out of the case when it was unclear that they were the actual attending physicians of the plaintiff even though the plaintiff was in possession of medical records with their names on them. The Baez court did not advocate, as Defendants do here, that the plaintiff should have just listed all names in the records as defendants in her complaint. In fact, the Court in Baez actually says the opposite: "To be sure, we by no means endorse the 'scattershot' naming in a malpractice complaint of every doctor whose name may appear in a patient's hospital chart. Such indiscriminate overinclusion would be contrary to public policy." Id.

Similarly, here, Plaintiffs decided not to take the "scattershot" approach and name every single medical professional in the medical records, and initially only named those whose liability was clear and plead fictitious names in case additional defendants were identified in discovery. Id.; Benedetto at 3-13. There are hundreds of pages of medical records in this matter which containing dozens of names of various doctors, nurses and others, records that are unorganized,

17

confusing, messy, and incomplete.  Id. at 5.   In fact, Plaintiffs' expert stated in her affidavit of

merit that the "vague system" of documentation in the medical records was "disastrous."  See

AOM, attached to Smith Cert. as Exhibit B.  It was not until a review of these new documents, the

conversations with opposing counsel, conferences with the Court, and consultation with their

expert that Plaintiffs realized Defendants were culpable such that amendment was necessary.  See

Benedetto Cert. at 3-13.  As such, for those reasons and because the records here were not just

"unclear," like those in Baez, but "disastrous," this Court, like the court in Baez, should deny the

Motion.  See id.; 453 N.J. Super. at 437; AOM, attached to Smith Cert. as Exhibit B.   Moreover,

this situation is also similar to the recent Appellate Division Case Rosenberg v. Englewood Hosp.

and Med. Ctr., Inc., A-4525-16T4, 2019 WL 1306268, at *5–6 (N.J. Super. App. Div. Mar. 21,

2019).  In Rosenberg, the name of the nurse that plaintiff was seeking to add was listed within

medical records that were already in plaintiff's possession prior to filing suit.  However, within a

crucial portion of the medical records which identifies a nurse taking a crucial role in plaintiff's

treatment, instead of providing her actual name, the records simply list her as "Agency Nurse RN

104."  Id.  The Appellate Division in that case allowed amendment, as the Court should here.

     Additionally, amendments to pleadings after the expiration of the statute of limitations are

allowed if the amendments in question relate back to the original pleading.  F.R.C.P. Rule 15(c)(1);

New Jersey Court Rule 4:9-3. "Relation back under New Jersey Court Rule 4:9–3 is to be liberally

allowed."  MSKP Oak Grove, LLC v. Venuto, 2014 WL 4385979, at *9–10 (D.N.J. Sept. 5, 2014),

citing Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 499, 888 A.2d 464 (2006). "Pursuant to Rule

15(c)(1)(C) relation back is available if a proposed defendant received actual or constructive notice

of the action."  Browning v. Safmarine, Inc., 287 F.R.D. 288 (D.N.J. 2012). "Notice is

sufficient when a party has a reasonable expectation of being named a defendant after learning

about the litigation through some informal means." Browning v. Safmarine, Inc., 287 F.R.D. 288 (D.N.J. 2012), citing Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 195 (3d Cir.2001). "[F]act that particular allegation was not mentioned in original pleading may be considered unimportant where original pleading gave opposing party notice that claim was being asserted against him in connection with particular transaction." Cruz v. City of Camden, 898 F. Supp. 1100 (D.N.J. 1995), citing F.R.C.P. Rule 15(c).

   The Supreme Court has held that the only relevant inquiry, in deciding whether an amendment to change a party can benefit from the relating-back provision, is whether "the party to be added knew or should have known." Krupski v. Costa Crociere S.P.A., 560 U.S. 538, 541 (2010). One such method of proving notice is the identity of interest method. Id. "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Garvin v. City of Philadelphia, 354 F.3d 215, 222–23 (3d Cir. 2003), quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 196–97 (3d Cir. 2001); see also Schiavone v. Fortune, 477 U.S. 21, 29 (1986) ("Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party."); Otchy v. City of Elizabeth Bd. of Educ., 325 N.J. Super. 98, 108, 737 A.2d 1151 (App. Div.1999) ("[r]elation-back depends upon whether the newly added party has demonstrated a sufficient identity of interest to justify treating it and the originally named party as a single legal entity."); Walters v. Breathless 2000, 2010 WL 4103683, at *8 (N.J. Super. App. Div. July 23, 2010) (finding sufficient identity of interest for purposes of relation back where newly added party was original party's principal shareholder).

Claims do not have to be specifically stated in the original complaint in order for them to relate back if they are still rooted within the facts stated in the original complaint. Costa v. J. Fletcher Creamer & Sons, Inc., 2018 WL 3756445, at *3 (D.N.J. Aug. 8, 2018) (law against discrimination claim allowed on plaintiff's assertion that he was retaliated against and that Defendants failed to pay him as required by law without specifically getting into the details of the discrimination); Miller v. Warren Hosp. IPA, 2016 WL 3509305, at *3–4 (D.N.J. June 27, 2016) (plaintiff's claims against new health providers for vicarious liability in its amended complaint allowed because they related back to the negligence claims in its original complaint even though they were not specifically named therein).

Here, the original complaint included the facility in which the Decedent was treated by Defendants.  See Exhibit A to the Benedetto Cert., attached to the Smith Cert. as Exhibit E.  As such, as someone from the facility added as a defendant who treated Decedent, Defendants "knew or should have known" that they may be brought into the lawsuit, sufficient to "relate back" under Rule 15(c)(1).  See Krupski, 560 U.S. at 541.  Therefore, for the reasons articulated at length above, the Motion must be denied.

Finally, where, like here, there is no prejudice, the Court must "relax Rule 4:26–4 so that the [third] amended complaint relates back to the original complaint."  Viviano, supra, 306 ("Under the singular circumstances of this case, which include [defendant's] acknowledgment that it has not been prejudiced, justice requires that we invoke Rule 1:1–2 and relax Rule 4:26–4 so that the sixth amended complaint relates back to the original complaint. To do otherwise would permit concealment and technicality to triumph over the interests of justice.") (citations omitted); see also Farrell v. Votator Div. of Chemetron Corp., 299 A.2d 394, 400 (N.J. 1973) ("Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and

the absence of prejudice, reliance or unjustifiable delay, strengthens the conclusion that this may fairly be done in the matter at hand without any undue impairment of the two-year limitation or the considerations of repose which underlie it.") (citations omitted); Worthy, *supra*, 595 ("Perhaps most importantly, Dr. Wetjen was not prejudiced by the delay in formal identification as a potentially liable party and the ultimate service of an amended complaint. Nothing impaired his ability to defend the action.") (citations omitted); Claypotch v. Heller, Inc., 823 A.2d 844, 850 (N.J. Super. App. Div. 2003) *citing* Farrell, supra, 62 N.J. at 122, 299 A.2d 394 ("absent evidence that 'the lapse of time has resulted in a loss of evidence [,] impairment of ability to defend' or 'advantage' to plaintiffs, '[j]ustice impels strongly towards affording the plaintiffs their day in court on the merits of their claim[.]'").

Here, there will be no prejudice to Defendants.  Benedetto Cert. at 16.  The Amended Complaint was filed as quickly as possible considering the circumstances noted above, and which included staffing and administrative delays caused by the Covid closures.  Id.  In addition, Plaintiffs' counsel did not have the full benefit of having possession of all records which to this date, Plaintiffs believe still are incomplete.  Id.  Further, written discovery is not complete, and any new defendant could easily be sent all discovery already exchanged.  Id.  Defendants enter this case in essentially the same position as other of the Defendants.  See id.  Therefore, there is no prejudice to Defendants such that to the extent necessary, R. 4:26-4 must be relaxed and the Motion be denied.  Viviano, 503 A.2d at 306.

## V.     THE NOTICE OF CLAIM PROVISION WAS MET, TO THE EXTENT IT EVEN APPLIES

Defendants argue that Plaintiffs failed to file a notice of claim under the New Jersey Tort Claims Act such that the Motion must be granted.  However, that argument fails for two reasons. First, the New Jersey Tort Claims Act does not apply to Plaintiffs' statutory Civil Rights claims.

See Hake v. Manchester Twp., 98 N.J. 302, 305 (1985); see also Aversano v. Palisades Interstate Pkwy., 363 N.J. Super. 266 (App. Div. 2003). As such, Plaintiffs' statutory claims against Defendants are not futile even if no notice of claim were filed. Second, Plaintiffs filed a notice of claim in January of 2018. See Notice of Claim, attached as Exhibit G. Though it does not name Defendants specifically, it constitutes substantial compliance with the New Jersey Tort Claims Act. See Newberry v. Township of Pemberton, 319 N.J. Super. 671 (App. Div. 1999); Lebron v. Sanchez, 407 N.J.Super. 204, 215–16 (App. Div. 2009).

## <u>CONCLUSION</u>

For all the reasons set forth herein, this Court must deny Defendants' Motion to Dismiss.

Respectfully submitted,

**SMITH + SCHWARTZSTEIN LLC**
*Attorneys for Plaintiffs*

/s/ Andrew Smith

By: _____

Andrew B. Smith, Esq.

DATED:  October 3, 2022