# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ESTATE OF EDWARD C. GANDY, JR. et al.

    Plaintiffs,

v.

CITY OF MILLVILLE et al.

    Defendants.

No. 1:20-cv-00641

**OPINION**

**APPEARANCES:**

Andrew Brian Smith
SMITH & SCHWARTZSTEIN LLC
Summit, NJ 07901

    *On behalf of Plaintiffs*

Michael Barker
Jeffrey Paul Sarvas
BARKER, GELFAND & JAMES
Linwood, NJ 08221

    *On behalf of Defendants City of Millville, Millville Police Department, Jody Farabella, and Colt Gibson*

Mitchell S. Berman
MITCHELL S. BERMAN LLC
Vineland, NJ 08362-1120

    *On behalf of Defendants Cumberland County Guidance Center and Cumberland County Mental Health & Crisis Screening Facility*

Ryan Notarangelo
DUGHI, HEWITT & DOMALEWSKI, PC
Cranford, NJ 07016

    *On behalf of Defendant Victoria Elgulashvili, M.D.*

Michael G. Halpin
GROSSMAN & HEAVY
Brick, NJ 08721

    *On behalf of Defendants Inspira Medical Centers, Inc. and Christal Hardin, R.N.*

Colin J. O'Brien
John Patrick Carty
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103

    *On behalf of Defendant Marie Hasson, M.D.*

Dominic A. Delaurentis, Jr.
STAHL & DELAURENTIS, PC
10 E. Clements Bridge Road
Runnemede, NJ 08078

    *On behalf of Defendants James J. Rogers, D.O. and Stephen Marc Scheinthal, M.D.*

**O'HEARN, District Judge.**

This matter comes before the Court on Defendant Inspira Medical Centers, Inc.'s ("Inspira") Motion to Dismiss Direct Claims, (ECF No. 146), and Motion to Limit Damages. (ECF No. 139). For the reasons that follow, the Motion to Dismiss Direct Claims is **GRANTED** and the Motion to Limit Damages is **GRANTED IN PART AND DENIED IN PART**.

**I.     BACKGROUND**

This case arises from the death of Edward C. Gandy Jr. (the "Decedent" or "Mr. Gandy"), who was shot and killed by police on January 22, 2018. (Pl.'s Counterstatement of Material Facts, ECF No. 150-3, ¶ 58). Between November 2017 and January 2018, police on several occasions escorted Mr. Gandy to Inspira emergency rooms because of erratic behavior and suicidal ideation. (ECF No. 150-3, ¶ 4, 16, 27, 32).

On January 9, 2018, Mr. Gandy brought a knife to a Wawa, where he told a gas station attendant he wanted to die. (ECF No. 150-3, ¶ 30). When the police arrived, Mr. Gandy asked the officers to shoot him. (ECF No. 150-3, ¶ 31). Police then transported Mr. Gandy to an Inspira emergency room for psychiatric screening. ( ECF No. 150-3, ¶ 32). On January 10, 2018, Mr. Gandy was involuntarily committed to the Bridgeton Mental Health Unit in Bridgeton, New Jersey. (ECF No. 150-3, ¶ 36–37). Mr. Gandy was discharged from involuntary commitment on January 18, 2018. (ECF No. 150-3, ¶ 53).

On January 22, 2018, police encountered Mr. Gandy in the parking lot of a Rite Aid pharmacy in the City of Millville, New Jersey. (ECF No. 150-3, ¶ 55–58). During this encounter, police shot and killed Mr. Gandy. (ECF No. 150-3, ¶ 58). The Decedent was transported by ambulance to Inspira Medical Center in Vineland, New Jersey, where he was pronounced dead. (ECF No. 150-3, ¶ 59).

## II.     PROCEDURAL HISTORY

Mr. Gandy's estate, by and through its administrator, Shane S. Gandy, and Shane S. Gandy in his individual capacity (together, "Plaintiffs") filed their initial Complaint on January 17, 2020, alleging a violation of Mr. Gandy's federal civil rights and state law claims against the city of Millville, the Millville Police Department, individually named police officers, unnamed John Doe police officers, Cumberland County Guidance Center, Cumberland County Mental Health & Crisis Screening Facility, and John Doe Corporations and Entities. (ECF No. 1).

Plaintiffs first amended their complaint on August 27, 2020, adding "Inspira Health Center Bridgeton, Mental Health Unit, and Inspira Medical Center" as defendants. (ECF No. 20). On September 16, 2021, Plaintiffs filed their Second Amended Complaint, adding Marie Hasson, M.D., the Center for Family Guidance, P.C., "John and Jane Does Center for Family Guidance, P.C. 1–10," and Defendants Stephen Marc Scheinthal, D.O., and James J. Rogers, D.O. (ECF No. 58). In Plaintiffs' Third (and final) Amended Complaint, filed on November 23, 2021, Plaintiffs added Defendants Christal Hardin, R.N., and Victoria Eligulashvili, M.D. (ECF No. 71).

On October 7, 2022, this Court issued a Letter Opinion, (ECF No. 132), and an associated Order, (ECF No. 131), dismissing Plaintiffs' claims against defendants Christal Hardin, R.N., Victoria Eligulashvili, M.D., Stephen Marc Scheinthal, D.O., and James J. Rogers, D.O. And, on July 18, 2023, this Court issued a Letter Order dismissing Plaintiffs' claims against Defendants Center for Family Guidance, P.C. and Marie Hasson, M.D. (ECF No. 165).

Inspira filed the Motion to Limit Damages now before the Court on December 22, 2022. (ECF No. 139). Plaintiffs filed a Response on January 3, 2023, (ECF No. 142), to which Inspira replied on January 9, 2023. (ECF No. 144). Inspira filed the Motion to Dismiss Direct Claims now before the Court on January 17, 2023. (ECF No. 146). Plaintiffs responded to that motion on

February 7, 2023, (ECF No. 146), and Inspira replied on February 16, 2023. (ECF No. 153).

### III. LEGAL STANDARDS

#### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law."[1] A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there exists no genuine issue of material fact. *Baymont Franchise Sys. v. SB Hosp. Palm Springs*, *LLC*, No. 19-06954, 2022 WL 2063623, at *3 (D.N.J. June 8, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When courts consider the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346.

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[I]f the nonmovant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50); see *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) ("[A] party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations."). However, "[if] reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *Anderson*, 477 U.S. at 250–51.

---

[1] It is unclear why Inspira cites and relies upon the New Jersey Rules of Court as the appropriate standard. The Federal Rules of Civil Procedure, and not New Jersey law, govern summary judgment in this matter.

4

### B. New Jersey Charitable Immunity Act

The New Jersey Charitable Immunity Act ("NJCIA") limits the negligence liability of nonprofit hospitals to $250,000. N.J. STAT ANN. § 2A:53A-8. To fall within the protections of the NJCIA, a defendant must demonstrate: "(1) that the defendant is a charitable organization organized exclusively for hospital purposes, and (2) that the plaintiff was a beneficiary of its services." *Hottenstein v. City of Sea Isle City*, 981 F. Supp. 2d 292, 294 (D.N.J. 2013) (citing *Mottola v. City of Union City*, No. 05-3964, 2006 WL 2177405, at *2 (D.N.J. July 31, 2006).

## IV. ANALYSIS

### A. Motion for Summary Judgment of Direct Claims

Inspira argues that Plaintiffs' direct claims against it should be dismissed because there exists no genuine dispute of material fact as to whether Inspira employees engaged in conduct that could support such claims. Specifically, Inspira argues that Plaintiffs improperly attribute allegedly negligent conduct to Inspira when that conduct was undertaken by parties employed by separate entities. Plaintiffs respond that there exists a genuine dispute of material fact as to whether any Inspira employee negligently treated Mr. Gandy.

Plaintiffs assert claims against Inspira for negligence, survivorship, and wrongful death. (Pl.'s Third Am. Compl., ECF No. 71, ¶ 113–135). However, Plaintiffs do not clearly identify the basis for these claims and instead leave this Court to divine their meaning. Accordingly, as best the Court can discern, Plaintiffs ground their claims in alleged medical malpractice on the part of Inspira.[2] To succeed in a claim for medical malpractice, a plaintiff must prove, through expert

---

[2] To the extent Plaintiffs suggest in their briefs that they are pursuing direct claims beyond medical malpractice, such as negligent hiring or supervision, such claims were never asserted in the pleadings and thus constitute an improper attempt to expand the scope of the Third Amended Complaint through briefing. *Penn. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs").

5

testimony: (1) an applicable standard of care, (2) a deviation from this standard of care, (3) injury, and (4) proximate causation between the breach and the injury. *Jackson v. Fauver*, 334 F. Supp. 2d 697, 741 (D.N.J. 2004) (citing *Teilhaber v. Greene*, 727 A.2d 518 (N.J. Super. Ct. App. Div. 1999)).

Presumably to this end, Plaintiffs provide the Confidential Psychiatric Consultation Report of Vivian Chern Shnaidman, M.D. (the "Schnaidman Report" or the "Report"). (ECF No. 146-13). The Schnaidman Report describes only one substantive deviation from an applicable standard of care—Dr. Marie Hasson's decision to discharge Mr. Gandy from compulsory psychiatric treatment. (ECF No. 146-13, p. 16) ("The deviation in the standard of care lies in the alacrity with which Mr. Gandy was discharged . . . ."). The Report speculates but does not conclude that Inspira's electronic records deviated from statutory requirements. (ECF No. 146-13, p. 14). And the Report also offers the bare assertion that "the care provided by Dr. Hasson, the Inspira Health Network, and the Family Guidance Center was below the acceptable standard of care." (ECF No. 146-13, p. 17). However, speculation and bald conclusions of this sort cannot support a medical malpractice claim. Even affording all deference to the non-moving party, the decision to discharge Mr. Gandy constitutes the only "deviation from [a] standard of care" that Plaintiffs have presented and is thus the only viable basis for the claims at issue. *Jackson*, 334 F. Supp. 2d at 741.

This decision cannot be attributed directly to Inspira. Dr. Hasson is indisputably an employee of the Center for Family Guidance ("CFG"). (Zoom Dep. of Marie Hasson, M.D., ECF No. 146-12) (establishing that Dr. Hasson "is employed directly CFG"). And Dr. Hasson is the sole signatory of the Discharge Summary. (Discharge Summary, ECF No. 167-9). Nothing in the record indicates that additional medical providers—employed by Inspira or otherwise—participated in the determination to release Mr. Gandy. Accordingly, Inspira is entitled to judgment

6

as a matter of law as to any direct claims against it.³

### B. Motion to Limit Damages

Inspira argues its total liability should be capped at $250,000 under the New Jersey Charitable Immunity Act ("NJCIA"). Plaintiffs seem to imply that the NJCIA does not apply to Inspira under the present circumstances and argue that the NJCIA cannot cap damages for survivorship or wrongful death claims. Plaintiffs further argue that, because the NJCIA does not cap damages for claims grounded in conduct more aggravated than simple negligence, damages for such claims should not be capped.

The Court finds that, as a threshold matter, the NJCIA applies to Inspira. The Court further notes that survivorship and wrongful death claims are indeed capped under the NJCIA, so long as those claims are premised upon simple negligence. Accordingly, the NJCIA caps at $250,000 all claims against Inspira that sound in simple negligence, including survivorship and wrongful death claims. However, if Plaintiffs prove claims beyond simple negligence—such as gross negligence—the cap does not apply.

1. Application of NJCIA to Inspira in This Case

Because Inspira is a nonprofit entity organized exclusively for hospital purposes, and because Mr. Gandy was a beneficiary of Inspira's care at the time of the challenged conduct, the NJCIA applies to Inspira in this case.

Courts in this District routinely find that an entity is a "charitable organization organized exclusively for hospital purposes" where the entity produces documentation showing nonprofit status and identity as a hospital. *See, e.g.*, *Simon v. Giantiempo*, No. 19-602, 2022 WL 1200812,

---

³ Inspira has expressly conceded that Plaintiffs may have valid indirect claims against it, noting in particular that Plaintiffs may claim Dr. Hasson acted under Inpsira's apparent authority in making the discharge decision. *See Est. of Cordero ex rel. Cordero v. Christ Hosp.*, 958 A.2d 101 (N.J. Super. Ct. App. Div. 2008*).* The Court makes no findings with respect to this claim.

at *8 (D.N.J. April 22, 2022); *Hottenstein*, 981 F. Supp. 2d at 294; *Mottola v. City of Union City*, No. 05-3964, 2006 WL 2177405, at *2 (D.N.J. July 31, 2006). A plaintiff's beneficiary status depends on "whether the institution pleading the immunity . . . was engaged in the performance of the charitable objectives it was organized to advance" at the time the challenged conduct occurred. *Hottenstein*, 981 F. Supp. 2d at 294 (citing *Hehre v. DeMarco*, 24 A.3d 836, 840 (N.J. Super. Ct. App. Div. 2011)). "Every patient at [a] hospital receiving care is a beneficiary of its work." *Mottola,* 2006 WL 2177405, at *2 (citing *Johnson v. Mountainside Hosp.*, 571 A.2d 318, 322 (N.J. Super. Ct. App. Div. 1990)).

Inspira has submitted documentation, including an affidavit by its General Counsel, certifying its nonprofit status and hospital purpose. (Cert. of Matthew K. Doonan, Esq., ECF No. 139-5). New Jersey courts have also consistently found the NJCIA applies to Inspira. (Ex. D., ECF No. 139-9). As identified above, the challenged conduct consists entirely of Dr. Hasson's decision to discharge Mr. Gandy. To the extent Inspira was involved in this decision, the conduct occurred while Mr. Gandy was a patient of Inspira, and therefore a beneficiary of its work. *Mottola,* 2006 WL 2177405, at *2. Accordingly, Inspira is a nonprofit entity organized exclusively for hospital purposes, and Mr. Gandy was a beneficiary of Inspira's services at the relevant time. Thus, the NJCIA applies to Inspira.

2. Application of the NJCIA to the Present Claims

The NCJIA also limits damages for Plaintiffs' remaining claims—including claims for survivorship and wrongful death—if those claims sound in simple negligence. However, the NJCIA will not cap damages if Plaintiffs prove the challenged conduct constitutes some other kind of wrongdoing, such as gross negligence.

The NJCIA "immunizes simple negligence only, and not other forms of aggravated

wrongful conduct, such as malice or fraud, or intentional, reckless, and wanton, or even grossly negligent behavior." *Harwicke v. Am. Boychoir Sch.*, 902 A.2d 900, 918 (N.J. 2006) (internal citations and quotation marks omitted). Contrary to Plaintiffs' assertion that statutory claims can never be capped, the NJCIA limits damages for such claims if the "conduct that is statutorily prohibited falls within the scope of common law negligence." *Ptasynski v. Atl. Health Sys.*, 111 A.3d 111, 121 (N.J. Super. Ct. App. Div. 2015) (citing *Harwicke*, 902 A.2d at 918 n.11), *cert denied,* 151 A.3d 965 (2016). Courts in this district have applied the NJCIA to cap potential damages for wrongful death and survivorship claims. *See, e.g., Hottenstein*, 981 F. Supp. 2d at 292 (D.N.J. 2013) (applying the NJCIA to cap a hospital's damages for survivorship and wrongful death claims in a case arising from a patient's death). And damages for claims of vicarious negligence are also capped under the NJCIA. *See Maciag v. Strato Medical Corp.*, 644 A.2d 647, 652 n.4 (N.J. Super. Ct. App. Div. 1994) ("[I]f the hospital is rendered liable on the basis of the actions of the surgical nurses . . . damages will be limited to $250,000.").

As set forth above, Dr. Marie Hasson's decision to discharge Mr. Gandy from compulsory psychiatric care provides the only basis for Plaintiffs' claims against Inspira. The application of the NJCIA depends on whether a jury finds that this conduct constitutes simple negligence or something more. If simple negligence, then damages for all claims—including claims for survivorship and wrongful death—are subject to the NJCIA's cap because the challenged conduct "falls within the scope of common law negligence." *Ptasynski*, 111 A.3d at 121. However, if this conduct constitutes some other kind of wrongdoing like "reckless, wanton, or grossly negligent behavior," then the NJCIA does not cap damages. *Harwicke*, 902 A.2d at 918.

Accordingly, the Court grants Inspira's Motion to Limit Damages to the extent that Plaintiffs' claims sound in simple negligence. The Court denies the Motion to the extent Plaintiffs

9

can prove their claims sound in some other kind of wrongdoing—specifically, gross negligence.

## V. CONCLUSIONS

For the foregoing reasons, Inspira's Motion to Dismiss Direct Claims, (ECF No. 146), is **GRANTED** and Inspira's Motion to Limit Damages, (ECF No. 139), is **GRANTED IN PART AND DENIED IN PART**.

_____
**CHRISTINE P. O'HEARN**
**United States District Judge**