# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ESTATE OF EDWARD C. GANDY, JR. et al,

    *Plaintiffs*,

v.

CITY OF MILLVILLE et al.,

    *Defendants*.

No. 1:20-cv-00641

**OPINION**

**APPEARANCES:**

Andrew Brian Smith
SMITH & SCHWARTZSTEIN LLC
Summit, NJ 07901

    *On behalf of Plaintiffs*

Michael Barker
Jeffrey Paul Sarvas
BARKER, GELFAND & JAMES
Linwood, NJ 08221

    *On behalf of Defendants the City of Millville, Millville Police Department, Jody Farabella, and Colt Gibson*

Mitchell S. Berman
MITCHELL S. BERMAN LLC
Vineland, NJ 08362-1120

    *On behalf of Defendants Cumberland County Guidance Center and Cumberland County Mental Health & Crisis Screening Facility*

Ryan Notarangelo
DUGHI, HEWITT & DOMALEWSKI, PC
Cranford, NJ 07016

    *On behalf of Defendant Victoria Elgulashvili, M.D.*

Michael G. Halpin
GROSSMAN & HEAVY
Brick, NJ 08721

    *On behalf of Defendants Inspira Medical Centers, Inc. and Christal Hardin, R.N.*

Colin J. O'Brien
John Patrick Carty
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103

    *On behalf of Defendant Marie Hasson, M.D.*

Dominic A. Delaurentis, Jr.
STAHL & DELAURENTIS, PC
10 E. Clements Bridge Road
Runnemede, NJ 08078

    *On behalf of Defendants James J. Rogers, D.O. and Stephen Marc Scheinthal, M.D*

**O'HEARN, District Judge.**

This matter comes before the Court on Motions for Summary Judgment filed by Defendants Officer Colt Gibson, (ECF No. 147), Police Chief Jody Farabella, (ECF No. 148), and the City of Millville and the Millville Police Department, (ECF No. 149) (all together, the "Municipal Defendants"). For the reasons that follow, the Municipal Defendants' Motions for Summary Judgment are **GRANTED**.

## I. FACTUAL BACKGROUND

This case arises from the tragic death of Edward C. Gandy Jr. ("Mr. Gandy" or the "Decedent"), who was shot and killed by police on January 22, 2018. (Statement of Facts in Supp. Mot. for Summ. J. by Def. Police Officer Gibson, ECF No. 147-2, ¶¶ 18–20). Mr. Gandy had a long history of mental illness, including suicidal ideation, and he encountered police on several occasions in the months leading up to his death. (ECF No. 147-2, ¶ 1).

On the day of the shooting, Mr. Gandy called 911 twice in approximately three minutes. He gave his location as High and McNeal Streets in Millville, New Jersey. (Recording of Ed Gandy's First Call to 911, ECF No. 147-5). And he also told 911 dispatchers that he had a loaded gun and was "feeling homicidal." (Recording of Ed Gandy's Second Call to 911, ECF No. 147-6). Millville City Police Officer Colt Gibson and other officers arrived on the scene after the 911 call and encountered Mr. Gandy. (Statement of Facts in Supp. Mot. for Summ. J. by Def. Police Officer Gibson, ECF No. 147-2, ¶¶ 3–4, 12). As police officers arrived, Mr. Gandy approached their vehicle and crossed McNeal Street from his position on the corner.[1] (MVR, ECF No. 147-8, at

---

[1] The Court evaluates the Mobile Video Recording from Officer Colt Gibson's Police Vehicle (the "MVR"), (ECF No. 147-8), and the High Street Surveillance Video (the "Surveillance Video"), (ECF No. 147-9), from a neutral perspective, and does not defer to non-movants to the extent their version of the facts conflicts with recorded evidence. *Knight v. Walton*, 660 F. App'x. 110, 112 (3d Cir. 2016).

10:48–49).

Immediately after arriving on the scene, one of the officers shouted, "Ed, let me see your hands. Ed, let me see your hands." (ECF No. 147-8, at 10:48:46–53). The same officer then shouted Mr. Gandy's name twice. (ECF No. 147-8, at 10:48: 54–56). Mr. Gandy did not visibly react to the commands and approached the officers' vehicle with his right hand behind his back. (ECF No. 147-8, at 10:48:42–59). An officer then yelled "Ed, stop moving." (ECF No. 147-8, at 10:48:57). At no time did Mr. Gandy stop moving towards the officers. And at no time did Mr. Gandy show the officers his hands in response to the repeated commands to do so. Still approaching the police vehicle, Mr. Gandy raised an object from behind his back and pointed it at the officers with both hands extended in front of his body. (ECF No. 147-8, at 10:49:01–03). As police officers positioned themselves behind their vehicle, (Surveillance Video, ECF No. 147-9, at 4:35:26), Mr. Gandy—still advancing—lowered the object and placed both hands behind his back. (MVR, ECF No. 147-8, at 10:49:04). Officer Gibson stood from his place behind the police car and fired three shots with a rifle. (Surveillance Video, ECF No. 147-9, at 4:35:32). Mr. Gandy fell to the ground. (MVR, ECF No. 147-8, at 10:49:05). An ambulance arrived shortly thereafter, responders took Mr. Gandy away on a stretcher, and he was later pronounced dead. (ECF No. 147-8, at 10:50–51). Video evidence shows that approximately 37 seconds elapsed between officers' arrival and the fatal shooting. (MVR, ECF No 147-8, at 10:48:31–49:08).

## II. PROCEDURAL HISTORY

Mr. Gandy's estate, by and through its administrator, Shane S. Gandy, and Shane S. Gandy in his individual capacity (together, "Plaintiffs") filed their initial Complaint on January 17, 2020, alleging a violation of Mr. Gandy's federal civil rights and state law claims against the city of Millville, the Millville Police Department, individually named police officers, unnamed John Doe

3

police officers, Cumberland County Guidance Center, Cumberland County Mental Health & Crisis Screening Facility, and John Doe Corporations and Entities. (ECF No. 1).

Plaintiffs first amended their complaint on August 27, 2020, adding "Inspira Health Center Bridgeton, Mental Health Unit, and Inspira Medical Center" as defendants. (ECF No. 20). On September 16, 2021, Plaintiffs filed their Second Amended Complaint, adding Marie Hasson, M.D., the Center for Family Guidance, P.C., "John and Jane Does Center for Family Guidance, P.C. 1–10," and Defendants Stephen Marc Scheinthal, D.O., and James J. Rogers, D.O. (ECF No. 58). In Plaintiffs' Third (and final) Amended Complaint, filed on November 23, 2021, Plaintiffs added Defendants Christal Hardin, R.N., and Victoria Eligulashvili, M.D. (ECF No. 71).

On October 7, 2022, this Court issued a Letter Opinion, (ECF No. 132), and an associated Order, (ECF No. 131), dismissing Plaintiffs' claims against defendants Christal Hardin, R.N., Victoria Eligulashvili, M.D., Stephen Marc Scheinthal, D.O., and James J. Rogers, D.O. On July 18, 2023, this Court issued a Letter Order dismissing Plaintiffs' claims against Defendants Center for Family Guidance, P.C. and Marie Hasson, M.D. (ECF No. 165). And on August 28, 2023, this Court issued an Order, (ECF No. 169), and an associated Opinion, (ECF No. 168), dismissing Plaintiffs' direct claims against Defendant Inspira Medical Centers, Inc., and limiting Inspira's potential damages pursuant to the New Jersey Charitable Immunity Act.

The Municipal Defendants filed the Motions for Summary Judgment now before the Court on January 31, 2023. (ECF Nos. 147–49). Plaintiffs filed an omnibus Response to all Municipal Defendants' Motions for Summary Judgment on March 7, 2023, (ECF No. 156), and the Municipal Defendants replied in a single omnibus filing on March 13, 2023. (ECF No. 157).

### III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), courts may grant summary judgment when a

4

case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there exists no genuine issue of material fact. *Baymont Franchise Sys. v. SB Hosp. Palm Springs, LLC*, No. 19-06954, 2022 WL 2063623, at *3 (D.N.J. June 8, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When courts consider the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 346.

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[I]f the nonmovant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50); *see Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) ("[A] party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations."). However, "[if] reasonable minds could differ as to the import of the evidence, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250–51.

In qualified immunity cases, the existence of video evidence presents an "added wrinkle" to summary judgment standards. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "Where there is a video recording of the relevant facts, the Court views the facts as depicted in the recording, rather than in the nonmovant's favor" to the extent the recording contradicts the non-movant. *Knight v. Walton*, 660 F.App'x. 110, 112 (3d Cir. 2016) (citing *Scott*, 550 U.S. at 380–81).

5

## IV. DISCUSSION

The Municipal Defendants argue they are entitled to summary judgment because there exists no genuine dispute of material facts in this case and Officer Gibson's use of deadly force against Mr. Gandy was reasonable. The Court agrees and finds that all Municipal Defendants are entitled to judgment as a matter of law with respect to all Plaintiffs' claims.

### A. Claims Against the Millville Police Department

The Millville Police Department is entitled to summary judgment because the Department is not amendable to suit. Plaintiffs bring claims against the Department for alleged violations of Mr. Gandy's federal constitutional rights, violations of the New Jersey Civil Rights Act, and state law torts of negligence, wrongful death, and survivorship. (Pls.' Third Am. Compl., ECF No. 71). Plaintiffs' federal constitutional claims fail because "[i]n section 1983 actions, police departments cannot be sued in conjunction with municipalities because the police department is merely an administrative arm of the local municipality and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F.App'x 272, 278 (3d Cir. 2004). Plaintiffs' state law claims fail for the same reasons. *See Godley v. Newark Police Dep't*, No. 05-806, 2007 WL 269815, at *3 (D.N.J. 2007) (dismissing state law claims against the Newark Police Department because the "Police Department is merely an arm of the City"). The Millville Police Department is therefore entitled to judgment as a matter of law regarding all causes of action.

### B. Claims Against Officer Colt Gibson

Plaintiffs bring claims against Officer Gibson for violations of Mr. Gandy's federal constitutional rights and the New Jersey Civil Rights Act and also bring state tort claims for survivorship and wrongful death. (Pls.' Third Am. Compl., ECF No.71). In his Motion to Dismiss, Officer Gibson argues that his use of deadly force against Mr. Gandy was reasonable under the

undisputed facts of the case, and this entitles him to judgment as a matter of law regarding all Plaintiffs' claims. (ECF No. 147). The Court agrees and grants summary judgment.

1. Federal Constitutional Claims

Officer Gibson's use of deadly force against Mr. Gandy was objectively reasonable under the circumstances and he is therefore entitled to judgment as a matter of law with respect to Plaintiffs' federal constitutional claims against him.

Count II of Plaintiffs' Third Amended Complaint alleges Officer Gibson violated Mr. Gandy's federal constitutional rights. (ECF No. 71, ¶¶ 93–99). Section 1983 of Title 42 of the United States Code enables plaintiffs to recover for constitutional violations if they can prove they (1) were deprived of "a right or privilege secured by the Constitution or the laws of the United States" (2) by a person "acting under the color of state law." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989).

The proper analysis of Officer Gibson's use of force proceeds under the Fourth Amendment.[2] *Jefferson v. Lias*, 21 F.4th 74, 78 (3d Cir. 2021) ("Claims of excessive force against law enforcement officers brought by persons outside of police custody are analyzed under the Fourth Amendment." (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989))). "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Lamont*, 637 F.3d 177, 182–83)).

Deadly force constitutes a Fourth Amendment seizure. *See, e.g., Johnson v. City of Phila.*,

---

[2] Plaintiffs allege violations of the Eighth and Fourteenth Amendments. However "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Accordingly, these allegations are improper in the context of an excessive force claim.

7

837 F.3d 343, 349 (3d Cir. 2016) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). And deadly force is reasonable when an officer "has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Daniels v. City of Pittsburgh*, No. 22-1790, 2023 WL 2707178, at *2 (3d. Cir. 2023) (citing *Garner*, 471 U.S. at 3). To evaluate the reasonableness of the use of force in any seizure courts must assess the "totality of the circumstances," including the circumstances leading up to the challenged deployment of force. *Johnson*, 837 F.3d at 349 (citing, *inter alia*, *Abraham v. Raso*, 183 F.3d 279, 291 (3d Cir. 1999)).

The required analysis considers the "perspective of a reasonable officer on the scene rather than the 20/20 vision of hindsight" allowing for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force necessary in a particular situation." *Id.* at 350 (citing *Graham*, 490 U.S. at 396). Accordingly, police officers may justifiably deploy lethal force against unarmed suspects so long as the officer reasonably believes the suspect poses a deadly threat. *See Lamont v. New Jersey*, 637 F.3d 177, 177 (3d Cir. 2011) ("[A]n officer who uses deadly force in the mistaken belief that a suspect is armed will be forgiven so long as the mistake is reasonable and the circumstances otherwise justify the use of such force."); *Daniels*, 2023 WL 2707178, at *3 ("An officer is not constitutionally required to wait until he sets eyes upon a weapon before employing deadly force to protect himself . . . .").

Applying these standards, Officer Gibson's actions were objectively reasonable, and no jury could find that he violated Mr. Gandy's Fourth Amendment rights. *Lamont v. New Jersey* supports a finding that Officer Gibson could have reasonably—even if mistakenly—believed Mr. Gandy was armed and dangerous at the moment of the shooting. In *Lamont*, a suspect responded

to officer commands by quickly drawing his hands from the waistband of his pants. *Lamont*, 637 F.3d at 183. The Third Circuit found this action justified lethal force because the suspect's rapid movement from his waistband—a place many people keep firearms—led police to "reasonably believe[] he was drawing a gun." *Id*. Mr. Gandy's actions were more threatening than the conduct in *Lamont*. The suspect in that case merely withdrew his hands from his waistband, while here, Mr. Gandy pointed an object at police as if preparing to fire a handgun. Because Mr. Gandy's behavior was more threatening than conduct that warranted deadly force in *Lamont*, his actions created "probable cause to believe that he posed a threat of death or serious physical injury to the officer[s] or others" and therefore justified deadly force. *Daniels*, 2023 WL 2707178, at *2.

*James v. N.J. State Police* reinforces this conclusion and demonstrates that the circumstances leading up to the shooting justified the conclusion that Mr. Gandy may have been dangerous. In *James*, the Third Circuit found police "could reasonably conclude that [a suspect] posed a threat to others" in part because, before officers encountered the suspect, they knew he "was in possession of a firearm . . . and was reportedly mentally ill." *James v. N.J. State Police*, 957 F.3d 165, 172 (3d Cir. 2020). Mr. Gandy told 911 dispatchers that he had a loaded gun and was feeling homicidal. And according to Plaintiffs, Officer Gibson knew that Ed Gandy suffered from serious mental illness. (Pl.'s Suppl. Statement of Disputed Facts, ECF No. 156-1, ¶1). Because Mr. Gandy told authorities that he had a loaded gun and that he was "feeling homicidal," the officers had reason to believe Mr. Gandy's mental condition had deteriorated since their prior encounters with him, and that he had become *more* dangerous over time. Under *James*, Officer Gibson's awareness of these facts thus adds further weight to the conclusion that he could have reasonably believed Mr. Gandy posed a threat.

*Hudspeth v. City of Shreveport* provides a direct analogy from the Fifth Circuit and further

9

bolsters the conclusion that Officer Gibson could have reasonably believed Mr. Gandy was armed and dangerous at the moment of the shooting. In *Hudspeth*, a suspect pointed an object—later identified as a cell phone—at officers "with two hands and arms outstretched, as if he was aiming a handgun." *Hudspeth v. City of Shreveport*, 270 F.App'x 332, 333 (5th Cir. 2008). The Fifth Circuit found that under these circumstances, officers "had an articulable basis to believe [the suspect] was armed and could reasonably have perceived him as posing a threat of serious bodily harm." *Id.* at 337. For that reason, officers' subsequent use of deadly force did not violate the suspect's Fourth Amendment rights. *Id.* In the present case, Mr. Gandy, like the suspect in *Hudspeth*, pointed his cell phone at officers with both arms extended in front of his body "as if aiming a handgun." *Id.* at 333. *Hudspeth* thus provides a direct analogy to the present case and again adds further weight to the Court's conclusion that Officer Gibson could have reasonably believed Mr. Gandy was armed and dangerous. And again, Mr. Gandy's own statements that he was armed with a loaded gun and "feeling homicidal" further cement the reasonableness of the officer's beliefs and actions.

For all of these reasons, the Court finds that the circumstances of this case justified a reasonable officer in Gibson's position to believe Mr. Gandy posed a deadly threat. The use of lethal force against Mr. Gandy was therefore objectively reasonable, and Officer Gibson did not violate the Fourth Amendment. Officer Gibson is thus entitled to judgment as a matter of law with respect to the section 1983 claims against him.

2. New Jersey Civil Rights Act Claim

Officer Gibson is also entitled to summary judgment of Plaintiffs' claims under the New Jersey Civil Rights Act ("NJCRA") for the same reasons. Count IV of the Third Amended Complaint alleges Officer Gibson's use of force violated the NJCRA. (ECF No. 71, ¶¶ 106–112).

The "[New Jersey] Civil Rights Act provide[s] the citizens of New Jersey with a *State* remedy for deprivation of or interference with the civil rights of an individual." *Tumpson v. Farina*, 218 N.J. 450, 473 (2014) (emphasis in original) (internal citations omitted). Courts in this Circuit analyze NJCRA claims according to the same principles that govern section 1983 claims. *See Szemple v. Corr. Med. Servs.*, 493 F.App'x 238, 241 (3d Cir. 2012) ("The NJCRA is interpreted as analogous to § 1983."); *Applewhite v. Twp. of Millburn*, No. 11-6957, 2013 WL 5574569, at *4 (D.N.J. Oct. 9, 2013) ("[T]he Court will analyze the NJCRA claim analogously to the § 1983 claim."). Accordingly, Officer Gibson is entitled to judgment as a matter of law with respect to the NJCRA claim because his use of lethal force was objectively reasonable and did not violate Mr. Gandy's rights.

### 3. Survivorship and Wrongful Death Claims

Officer Gibson did not engage in any misconduct that could support claims of survivorship and wrongful death and he is therefore entitled to judgment as a matter of law regarding these causes of action.

Counts V and IX of the Third Amended Complaint allege that Officer Gibson is liable for survivorship and wrongful death respectively, because he used deadly force against Mr. Gandy. (ECF No. 71, ¶¶ 113–119; 136–141). Claims of this kind must be predicated on some underlying act of misconduct. *See, e.g.*, *Conde v. City of Atlantic City*, 293 F. Supp. 3d 493, 508 (D.N.J. 2017) (granting summary judgment as to survivorship and wrongful death claims "because there is no underlying constitutional violation" by the officers accused of excessive force).

As stated herein, Officer Gibson's actions were objectively reasonable and did not violate Mr. Gandy's rights. And Plaintiffs do not meaningfully argue there exists some other factual basis for their claims. Plaintiffs state in conclusory fashion that "[u]sing excessive force to kill Gandy

was certainly a breach of . . . duty which caused Gandy's death, thereby meeting all the requirements of negligence." (Pl. Opposition to Def. Mot. for Summary J., ECF No. 156, p. 20). But Plaintiffs do not cite any law or provide any evidence to support this point and "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations" of this kind. *Dunkin' Donuts Inc.*, 174 F. Supp. 2d at 210. The Court finds no other factual basis to support a finding of wrongdoing to support these claims. And Officer Gibson is therefore entitled to judgment as a matter of law.

### C. Claims Against the City of Millville

Plaintiffs bring claims against the City of Millville pursuant to section 1983, the New Jersey Civil Rights Act, and common law negligence, survivorship, and wrongful death. (Pls.' Third Am. Compl., ECF No. 71). The City is entitled to summary judgment of all causes of action because Officer Gibson's use of deadly force against Mr. Gandy did not violate the Fourth Amendment and Plaintiffs offer no independent factual evidence to support their state law claims.

1. <u>Section 1983 and NJCRA Claims</u>

Count I of the Third Amended Complaint alleges a federal constitutional violation on the grounds that the City failed to train and supervise Officer Gibson in the use of deadly force. (ECF No. 71, ¶¶ 87–92). And Count IV asserts these same alleged failures violated the NJCRA. (ECF No. 71, ¶¶ 113–119). A municipality may only be held liable for a federal constitutional tort "when the injury inflicted is permitted under its adopted policy or custom." *Beck v. City of Pittsburg*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. N.Y. City Dep't. of Soc. Servs.*, 436 U.S. 658 (1978)). A successful section 1983 claim against a municipality must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) a causal relationship between the constitutional injury and the policy or custom. *See Wilson v. City of*

*Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016); *see also Baez v. Lancaster Cnty.*, 487 F.App'x. 30, 32 (3d Cir. 2012) ("Plaintiff must establish an underlying constitutional violation to attribute liability to the County pursuant to *Monell*.").

As articulated above, Officer Gibson's use of deadly force was objectively reasonable and did not violate Mr. Gandy's rights. Accordingly, there exists no "underlying constitutional violation" to sustain liability and the City is entitled to judgment as a matter of law with respect to Plaintiffs' section 1983 claim. *Baez*, 487 F.App'x. at 32. Because Courts analyze NJCRA claims under the same standards as section 1983 claims, the City is entitled to judgment as a matter of law on Plaintiffs' state-level civil rights claim as well. *Szemple*, 493 F.App'x 238 at 241.

2. <u>Negligence Claim</u>

The City of Millville is also entitled to judgment as a matter of law with regard to common-law negligence claims. In Count VI of the Third Amended Complaint, Plaintiffs allege the City negligently failed to train and supervise Officer Gibson regarding the proper use of force—a different cause of action from the section 1983 claim that relies on similar allegations. (ECF No. 71, ¶¶ 120–124). "In order to establish a prima facie claim for negligent training [and supervision], a plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff." *Grieco v. Lanigan*, No. 15-7881, 2017 WL 384689, at *5 (D.N.J. Jan. 27, 2017) (citing *Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010)). "A plaintiff bears the burden of establishing [each of] those elements by some competent proof." *Id*. (quoting *Townsend v. Pierre*, 221 N.J. 36, 51 (2015)).

Contrary to the Municipal Defendants' assertions, "[c]ourts have consistently rejected [the] argument that the New Jersey Tort Claims Act bars liability for negligent supervision in the face

13

of an employee's willful conduct." *Pinkston v. City of Jersey City*, No. 19-13285, 2020 WL 4251485, at *11 (D.N.J. July 24, 2020); *see also V.A. v. N.J. Nat'l Guard Youth Challenge Program*, No. 06-00347, 2007 WL 2010940, at *3 (D.N.J. July 9, 2007) (collecting cases to this effect).

The Court nevertheless finds insufficient factual evidence in the record to support a negligence claim. In responding to the City's Motion for Summary Judgment, Plaintiffs argue only that this claim must remain viable because "a factfinder could find that Officer Gibson negligent [sic] in his use of excessive force." (Pl. Opposition to Def. Mot. for Summary J., ECF No. 156, at p. 26). "[S]peculation and conclusory allegations" of this kind cannot defeat a motion for summary judgment. *Dunkin' Donuts Inc.*, 174 F. Supp. 2d at 210. And this statement also appears to assert municipal negligence on a new theory of *respondeat superior*, which, if true, would constitute an impermissible attempt to expand the Complaint through briefing. *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs").

The Court's detailed examination of the record reveals a lack of factual evidence to support any claims of negligence. In discussing their section 1983 claim against the City for failure to train and supervise—again, a different cause of action relying on similar allegations—Plaintiffs note that Officer Gibson was once reprimanded for telling trainees "police shoot to kill." (ECF No. 156, at p. 8). Though troubling, this evidence is "merely colorable [and] 'not significantly probative'" of the City's negligence. *Messa*, 122 F. Supp. 2d at 528 (internal citations and quotation marks omitted). Plaintiffs also note that Officer Gibson had received several complaints before this incident and that the City has been subject to previous excessive force claims. (ECF No. 156, at p.8). Prior complaints against Officer Gibson were not for excessive force, however. (Cumberland

Cnty. Prosecutor's Off. Internal Affairs Investigation Rep., ECF No. 156-6, at p. BGJS/001470). And nothing in the record indicates that complaints against the City involved deadly force or resulted in findings of wrongdoing. (Collected Excessive Force Compl. Against City of Millville, ECF No. 156-8). To the extent Plaintiffs offer this evidence to support negligence claims against the City, the evidence is "merely colorable," not relevant to the claims at issue, and cannot prove liability.  *Messa*, 122 F. Supp. 2d at 528.

The failure of Plaintiffs' related claim for failure to supervise and train under section 1983 adds further weight to this conclusion. *See*, *Godley*, 2007 WL 269815 at *3 (dismissing common law negligent hiring, training, and supervision claims in part because section 1983 claims of failure to train and supervise failed); *Wheeler v. City of Jersey City*, No. 12-7528, 2016 WL 1029271, at *6 (D.N.J. Mar. 14, 2016) (dismissing state law negligent hiring, training, and supervision claims because "Plaintiffs presented no law" to support their state law tort claim and a section 1983 claim for failure to train and supervise also failed). Plaintiffs do not offer, and the Court does not find sufficient factual evidence to support a claim of negligence against the City. Accordingly, the City is entitled to summary judgment regarding liability for negligent failure to train and supervise Officer Gibson.

3.  Survivorship and Wrongful Death Claims

Because the City is entitled to judgment as a matter of law for all other alleged wrongdoing, there exists no underlying liability to support Plaintiffs' survivorship and wrongful death claims. The City is therefore entitled to summary judgment on these causes of action.

**D.  Claims Against Police Chief Jody Farabella**

Plaintiffs bring claims against Police Chief Jody Farabella for alleged federal constitutional violations, supervisory liability under section 1983, violations of the New Jersey Civil Rights Act,

and common-law negligence, survivorship, and wrongful death. (Pls.' Third Am. Compl., ECF No. 71). For the reasons articulated at greater length in discussions of claims against other Municipal Defendants, Chief Farabella is entitled to summary judgment of all causes of action.

Section 1983 claims require plaintiffs to establish some deprivation of constitutional rights. *Williams*, 891 F.2d at 464. As discussed herein, this case presents no such deprivation.[3] NJCRA claims are analyzed under the same standard as section 1983 claims. *Szemple v.* 493 F.App'x 238 at 241. So, the NJCRA cause of action fails alongside federal constitutional claims. Plaintiffs offer no evidence that can support claims of negligent supervision, as was the true of similar claims against the City. And survivorship and wrongful death claims fail against Chief Farabella for lack of underlying misconduct.

In summary, Edward Gandy's death was a tragedy. But the law does not provide for recovery against the Municipal Defendants under any of the theories advanced by the Plaintiffs. As dictated by binding and persuasive precedent, Officer Colt Gibson's exercise of deadly force was objectively reasonable and did not violate Mr. Gandy's Fourth Amendment rights. Thus, all Municipal Defendants are entitled to judgment as a matter of law with respect to Plaintiffs' claims against them and the Court grants the Municipal Defendants' Motions for Summary Judgment.

---

[3] Chief Farabella discusses Third Circuit precedent with respect to section 1983 supervisory liability at length in this Motion for Summary Judgment. (ECF No. 148). The Court does not reach the question of supervisory liability because the Court findsno Constitutional violation for which Chief Farabella may be vicariously liable.

V.     **CONCLUSION**

For the foregoing reasons, the Motions for Summary Judgment filed by Officer Colt Gibson, (ECF No. 147), Police Chief Jody Farabella, (ECF No. 148), and the City of Millville, (ECF No. 149), are **GRANTED**. An appropriate Order accompanies this Opinion.

_____
**CHRISTINE P. O'HEARN**
**United States District Judge**